## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LUBOS NAPRSTEK,

          Plaintiff,

          v.

DITECH FINANCIAL LLC,
      AND

DT HOLDINGS LLC
      AND
GREEN TREE SERVICING LLC
      AND
WALTER INVESTMENT MANAGEMENT
CO
      AND
FEDERAL NATIONAL MORTGAGE
ASSOCIATION (FANNIE MAE)
      AND
TBI
      AND
TOLL BROTHERS
      AND
BANK OF AMERICA
      AND
SAFEGUARD PROPERTY

          Defendants.

CIVIL ACTION NO.: 2:18-CV-11442-CCC-SCM

*Civil Action*

## COMPLAINT

Plaintiff, LUBOS NAPRSTEK, by and through his undersigned counsel, hereby submit

this Complaint against Defendants, and in support thereof, states as follows:

## PARTIES

1.     Plaintiff is an individual resident of the State of New Jersey with his primary

residential address located at 24 Briar Court Hamburg, NJ 07419.

2.      Upon information and belief, Defendant DITECH FINANCIAL LLC (DiTech) is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 1100 Virginia Drive Suite 100a, Fort Washington, PA 19034.

3.      Upon information and belief, Defendant DT HOLDINGS LLC (DT Holdings) is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 1100 Virginia Drive Suite 100a, Fort Washington, PA 19034.

4.      Upon information and belief, Defendant GREEN TREE SERVICING LLC (Green Tree) is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 1100 Virginia Drive Suite 100a, Fort Washington, PA 19034.

5.      Upon information and belief, Defendant WALTER INVESTMENT MANAGEMENT CO. is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 1100 Virginia Drive Suite 100a, Fort Washington, PA 19034.

6.      Upon information and belief, Defendant FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE) is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 1835 Market St, Philadelphia, PA 19103.

7.      Upon information and belief, Defendant TOLL BROTHERS is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 250 Gibraltar Rd, Horsham, PA 19044.

8.      Upon information and belief, Defendant TBI Mortgage (TBI) is a company organized and existing pursuant to the rules and laws of the Commonwealth of Pennsylvania with its principal place of business located at 250 Gibraltar Rd, Horsham, PA 19044.

9.      Upon information and belief, Defendant Safeguard Property is a company organized and existing pursuant to the rules and laws of the State of Ohio with its principal place of business located at 650 Safeguard Plaza, Brooklyn Heights, OH 44131.

10.     Upon information and belief, Defendant Bank of America, N.A. is a National Association organized and existing under Federal law with its principal place of business located at 100 North Tryon Street Charlotte, NC 28255-0001.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, as this matter involves federal claims arising under federal law, thereby invoking the Court's federal question jurisdiction.

12.     This Court has personal jurisdiction over Defendants, as Defendants have had the requisite minimum contacts with the State of New Jersey and Defendants have and continue to regularly conduct business in the State of New Jersey.

13.     Venue lies in the United States District of New Jersey, inasmuch as the acts, property, and transactions took place in New Jersey.

14.     Further, venue lies in the United States District Court for the District of New Jersey, as a substantial part of the events or omissions upon which Plaintiff's claims are based has occurred in the State of New Jersey.

15.     This Court has supplemental jurisdiction over Defendants pursuant to 28 U.S. Code § 1367.

## FACTS COMMON TO ALL COUNTS

### Relevant Historical Facts

16.     Defendants, engaged in unconscionable commercial practices, deception, fraud, false pretense, false promise, had unclean hands and/or misrepresentations with regard to the subject mortgage.

17.     Specifically DiTech falsely represented itself as being the creditor with respect to a debt owed by Plaintiffs. DiTech falsely represents or implies that it paid for the debt and falsely represents that it has documents that refer to a loan transaction in which a predecessor to DiTech loaned money to Plaintiffs. No such transaction occurred and the documents are conflicting, inconsistent and false having been fabricated and executed by unauthorized people.

18.     There are various versions of the mortgage. (See Exhibit A, all mortgages[1]).

19.     Additionally, there are various "allonges" that clearly were not part of the record or attached to the original note, making multiple versions of the allegedly same note. (See Exhibit B, All Notes and allonges and Exhibit C – CFLA).

20.     Defendants DiTech, DT Holdings and/or Green Tree falsely represent that they were merged into GreenTree Servicing, LLC when in fact all vestiges of DiTech and GreenTree were eradicated by a chain of events starting with an acquisition by GMAC Mortgage, LLC (GMAC) claiming to have purchased Ditech, which as then claimed as a "business unit" of Residential Capital, a controlled entity of General Motors Corporation, which in turn went through bankruptcy along with GMAC (General Motors Acceptance Corporation). During the mortgage crisis commencing in 2008 GMAC transferred the business name and the business unit to Ally Financial, which took its mortgage lending operation into bankruptcy.  In November 2012, a new

---

[1] All exhibits are incorporated by reference from the previous complaint.

"Ditech" was formed from assets of Ally's GMAC ResCap, Inc. estate during the bankruptcy proceeding.

21.     If anything, this statement is contradicted later on as it states "Green Tree was the surviving entity" but the company became Ditech Financial LLC any way. Thus the present use of the name "DITech" is intentionally misleading to imply that the current use of the name DiTech relates back to a processor, which it does not. (See Exhibit D – Ditech and Green Tree merger info).

22.     The Defendants have all conspired to make false representations concerning the identity of DiTech and Green Tree entities. At the time of the falsely represented merger DiTech was used as a fictitious name and as not an entity subject to merger or acquisition and there could have been no merger and no acquisition of loans, much less the loan relating to the Plaintiff. Notwithstanding the above, DiTech falsely represented to the court and the Plaintiffs, all of which representations are supported by reasonable reliance on the part of the Plaintiffs who had no knowledge nor any reason to even inquire into the true facts of the case, to wit: Plaintiffs  thus were forced to defend a fraudulent and wrongful foreclosure reasonably relying upon false documentation purportedly showing that DiTech actually was the creditor — i.e., that Plaintiff's loan was  an asset of DiTech. Nothing could have been further from the truth. DiTech was being used in concert with other names and entities to maintain remote control over the foreclosure by undisclosed third parties.

23.     Defendants falsely presented fabricated, back-dated endorsement on a stand alone separate piece of paper entitled allonge but which satisfied none of the elements of an allonge. Said "allonge" was falsely represented to transfer the promissory note to Countrywide Bank, N.A. thus memorializing a transaction in which Countrywide was falsely represented to have purchased the debt.

24.     Defendants also falsely presented fabricated, back-dated endorsement on a stand alone separate piece of paper entitled allonge but which satisfied none of the elements of an allonge and containing a purported endorsement to Champion Mortgage Company. Said "allonge" was falsely represented to transfer the promissory note to Champion thus memorializing a transaction in which Champion was falsely represented to have purchased the debt. Notwithstanding the above, no such transactions occurred in which anyone paid value for ownership of the debt owed by Plaintiff. Repeated attempts to gain information as tot eh identity of the party to whom the debt is actually owed have been met with stonewalling and false claims of proprietary privilege, as if a borrower is not allowed to know the other party to a putative loan contract.

25.     Again, there are no holes to indicate this was part of the record and appears to have simply been created by Defendant.

26.     Admitting that the first two "allonges" and "endorsements" were fabricated and false, Defendant fabricated a new false allonge and endorsement entitled "allonge to note." Defendants falsely presented fabricated, back-dated endorsement on a new stand alone separate piece of paper entitled allonge to note but which satisfied none of the elements of an allonge. Said "allonge" was falsely represented to transfer the promissory note again thus memorializing a transaction in which the endorser was falsely represented to have received value for the purchase of the debt, when in fact, the new "allonge" supposedly endorsed in blank simply contributed to the illusion that the debt was present in this transactions despite the obvious fact that the paper was fabricated and never related to any real transaction in the real world.

27.     Notwithstanding all of the above, Plaintiffs subsequently received from these same defendants letters falsely representing that Fannie Mae was the owner of the Plaintiff's debt.

28.     That means, the allonge was invalid as it was impossible for that individual to have signed it at that time.

29.     Additionally, the Assignments of Mortgage are questionable as well.

30.     The assignment from 2009 was allegedly signed by David Perez and then in February 2009 and in November 2009 he was the alleged signatory for the proof of amount due in the underlying Foreclosure matter. Kelly M Michie also signed the 2009 assignment. These were created by Countywide Employees. See Exhibit C – CFLA and Exhibit D Bill Paatalo's report).

31.     Additionally, all assignments after the 2009 Mortgage assignment are void, as that assignment, in and of itself, broke the chain of assignments.

32.     The defendants have each individually and collectively engaged in evasive or obfuscation strategies to avoid simple answers to simple questions as part of an overall effort of concealment of the fact that they had no right, title or interest in the debt and only claimed rights arising out of paper instruments. Plaintiffs have made numerous efforts to get basic data on their loan only to be rebuffed with excuses asserting that the right to know the identity of the owner of one's debt was somehow protected or privileged information — despite state and federal law to the contrary.

  a.     Defendant's attorneys made a material misrepresentation to the state court and directly violated a court order for production of documents, specifically, the original note was not produced for Defendant to view.

  b.     Specifically, a request was sent on May 5, 2017 to review the original note. (See Exhibit E – Request letter).

  c.     This request was not only sent to the opposing counsel but sent to Defendant Ditech Financial, LLC as well.

  d.     Interestingly, rather than receive a notice, response or anything from the opposing counsel, Mr. Lubos only got letters from Ditech on May 5, 2017,

July 28, 2017, September 7, 2017 and September 26, 2017. (See Exhibit E – Ditech letters).

Procedural History

33.     The first case filed by Defendants was at docket number F-009655-09.

34.     In the original 2009 complaint, the amount due was not included at all, which would have made it impossible for Plaintiff to reinstate the loan.

35.     As previously mentioned, Countrywide created the mortgage assignment using their own employees David Perez and Kelly M. Michiie and that the assignment memorialized a transaction that never occurred and was never contemplated.

36.     Michael S. Vardilli, currently with the firm Sandelands Eyet LLP, is the attorney who together with the Countrywide conspired to defraud the court by submitting documents that appeared facially valid and attempted to avoid filing requirements to further their goal of concealment by failing to provide an affidavit for certified copy of the loan documents. As a result of this failure to properly place documents on the record, a court order was issued on November 20, 2009 to produce original documents prior to application of final judgment.

37.     Michael S, Vardilli improperly cited to another Docket, F-2085-09, in his pleadings to create confusion in the process.

38.     Eventually this horrible misconduct did not work the complaint was dismissed without prejudice in September 13, 2013 for lack of prosecution.

39.     While Countrywide /BAC claimed to be the owner and holder in due course of the alleged loan, BAC made two payments to Fannie Mae in April and May 2013.

40.     The transfer of this loan to GreenTree servicing who also claimed to be the owner who has all interest of this loan and report these two payment on Plaintiff's credit report, created a second default as of June 2013.

41.     Greentree sent Plaintiff a Notice of intent to foreclosed in April 2014 and 25 Months later the Defendants reinitiated the case on March 18, 2016.

42.     A Motion to dismiss was filed on May 27, 2016.

43.     Defendants tried to make improper service on June 24, 2016 by claiming Plaintiff was absent from the property.

44.     On July 8, 2016, during the first hearing Plaintiff told judge Weaver that the defendants in this case have to follow the previous court orders.

45.     Plaintiff informed the court on July 8, 2016, in the underlying Foreclosure matter, of the fact that two payments were made to Fannie Mae in April and May 2013 by BAC.

46.     The payments were allegedly for the mortgage payment, insurance and property taxes, totaling $3,068.00 to Fannie Mae, apparently with the intent that it would be forwarded on for those purposes.

47.     The judge largely ignored the plaintiff and indicated that the first complaint of 2009 was invalid by saying there was no mortgage payment acceleration, which was patently false, as the only way the Complaint could have been filed was through acceleration of the mortgage.

48.     There had never been a letter de-accelerating the mortgage either.

49.     Plaintiff sent a letter to Defendant to see the note, and at no times was it produced.

50.     In the order denying the motion to dismiss in the 2016 Complaint does not have a proof of service docketed.

51.     Further, there was no notice regarding any order submitted in that case.

52.     The most grievous fraud committed was by Defendants' attorneys at the January 6, 2017 hearing.

53.     At that hearing, the judge not only ignored Defendants improper lack of service, but also did not properly verify standing by failing to verify assignments, filings, recording in the land of records or any original documents.

54.     The attorneys representing Ditech Financial LLC filed a mortgage assignment as the owner in due course but admitted they did not own the loan and they are foreclosing on behalf of Fannie Mae who was never in the chain of title sales.

55.     Further, one of the attorney's Kacie Brown of Buckley Madole, apparently contacted BAC asking questions about the alleged misconduct Claiming to be Plaintiff's representative.

56.     The person from BAC wrote Plaintiff a letter stating that Ms. Kacie Brown is not attorney on record for Plaintiff and as such, will not be receiving any information.

57.     Judge David J Weaver, the assigned judge in Sussex County for the underlying Foreclosure case permitted false statements to conceal the fraud of the plaintiff at the hearing on January 6, 2017 hearing.

58.     Additionally, Judge Maenza, who apparently was assigned the case for reasons unknown, not only lacked the jurisdiction to hear the matter, but also neglected to include a "Statement of reasons " as part of the order of final judgment in the underlying Foreclosure matter.

59.     This prejudiced Plaintiff in this case, because it means he was unable to discern why Final Judgment had been granted.

60.     The court also did not specify why the case had been transferred through several judgments including from Judge Weaver, to Judge Brennan to Judge Maenza, which also prejudiced Plaintiff, as it made it very difficult for him to stay in touch with the court to get updates on the motion and the hearing for the case.

61.     Further, the most recent judge, the honorable Augostini stated that she relied on Judge Maenza's stated reasons, even though they were not ever included on the record.

62.     This was a misstatement similar to the one previously, where Judge Weaver stated upon review of the 2009 case he found "no mortgage acceleration".

63.     This too clearly showed the underlying case was not found on proper grounds, further prejudicing Plaintiff.

64.     The attorney for Ditech stated that the there was no Foreclosure suit in 2009 at docket number F-9655-09 and no evidence of mortgage payment acceleration.

65.      Further, the court in the underlying matter ignored the deficiencies with the Complaint that was submitted, specifically it was lacking a letter of intent to foreclose, original and Certified copy of an affidavit by an authorized individual, a specific amount due stated via affidavit.

66.     The court failed to give Plaintiff notice which forced him to be absent to oral arguments due to the rule that a Pro Se litigant is responsible for attending the oral arguments by looking at the NJCourts dates of court hearings because there were no mail or phone notification of such dates.

67.     Additionally, the court, at later hearings, claimed that Plaintiff did not request oral argument, but this was incorrect and only served to further prejudice Plaintiff.

68.     Further, the Min number and other identifying numbers were missing from the note attached in Final judgment note; not redacted, simply not present.

69.     Then before an answer could be submitted Defendants asked for a default and received it.

70.     Then the third law firm RAS Citron sent Plaintiff unlawfully certified mail by dropping the mail in his mailbox with signature waivers on the Stamps.com/US Post office.

71.     Particularly, there were certified letters simply left in Plaintiff's mailbox without a signature and UPS left envelopes that did not ask for a signature, entirely improperly in regards service requirements.

72.     All the aforementioned bad faith actions are brought up to show that at no time has Plaintiff been able to work with the proper party to try and resolve the alleged deficiency.

73.     Through the entire process, Defendants have made claims of one party being the owner of the mortgage, when in reality, that was not the case, making modification impossible.

74.     Further, through these actions, Plaintiff's credit has suffered unjustly, as he has been unable to resolve this issue.

75.      Additionally, Defendants are now attempting to strip Plaintiff of his property, through deception and abusing the foreclosure process to that point that any and all attempts at resolution were stymied unfairly and improperly.

76.     While Plaintiff made several attempts to resolve this matter, at no time was any attempt made to seriously consider, by the Defendants, those attempts to resolve it, as they continued to perpetuate the fraud that they were the party in interest, stopping Plaintiff from being able to resolve it with the correct party.

77.     Additionally, there were several Requests For Information (RFIs) submitted to Defendants, and they were patently ignored by Defendants. (See Exhibit F – RFIs).

78.     Further, Safeguard threatened Plaintiff's wife with sheriff sale by improperly and illegally hanging notes on the door and other harassment as well at Plaintiff's home.

79.     Additionally, regarding the underlying Foreclosure matter, there were several issues claimed by the Foreclosure attorneys that are simply not accurate, such as there not being a mortgage acceleration, that there had not been threated of a Foreclosure sale, and various other

claims made during the Foreclosure action that encouraged and pushed forward the fraud in this matter.

80.    Further, as can be seen, the Notices of Intent To Foreclose that Countrywide and Ditech sent (NOI) did not state who the owner was of the loan, in violation of New Jersey State law. (See Exhibit G – NOIs).

81.    Actual damages in this case, likely exceeded one million dollars as Plaintiff suffered:

      a.      Obstruction of insurance claim for water damage for $3,810.00;

      b.      Losses from his guitar business from the negative exposure of the case;

      c.      Losses from not being able to continue his business of real estate investing; and

      d.      Losses from damage to his credit and reputation because of all of these improper actions

<u>Legal Arguments</u>

1.  Since it is now known what the Defendants are likely to assert as defenses, it is worth noting that all of the below claims should not be dismissed because of the Rooker-Feldman Doctrine, Res Judicata or Collateral Estoppel, nor should they be dismissed for the Entire Controversy Doctrine or any statutes of limitation.

2.  *Rooker-Feldman* "is a 'narrow doctrine' that 'applies only in limited circumstances.'" *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 169 (3d Cir. 2010) (quoting *Lance v. Dennis*, 546 U.S. 459, 464-66 (2006)).

3.  The doctrine, therefore, "does not bar suits that challenge actions or injuries underlying state court decisions—and especially those that predate entry of a state

court decision—rather than the decisions themselves." *Allen v. DeBello*, 861 F.3d 433, 438 (3d Cir. 2017).

4. Although the facts of the case are submitted for reference, the claims do not allege injuries arising from the state-court action itself.

5. Accordingly, the Rooker-Feldman doctrine does not bar plaintiff's complaint.

6. Further, since they were not already litigated, there is no defense of collateral estopped or res judicata.

7. New Jersey's entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 27 (N.J. 2015).

8. The third circuit has characterized the doctrine as "New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Ricketti v. Barry*, 775 F.3d 611, 613 (3d Cir. 2015).

9. The doctrine "applies in federal courts when there was a previous state-court action involving the same transaction[.]" *Id.*

10. Its application, however, is limited mandatory joinder of claims[;]" it no longer applies to mandatory joinder of parties. *Kent Motor Cars, Inc. v. Reynolds & Reynolds, Co.*, 25 A.3d 1027, 1036 (N.J. 2011); *accord Ricketti*, 775 F.3d at 614.

11. "[i]n the foreclosure context, the Entire Controversy Doctrine applies only to ... `claims arising out of the mortgage transaction which is the subject matter of the foreclosure action.'" *Shibles v. Bank of Am.*, N.A., No. 16-4357, 2017 WL 2423054,

at 5 (D.N.J. June 5, 2017) (*quoting In re Mullarkey*, 536 F.3d 215, 229-230 (3d Cir. 2008)).

12. Pursuant to this Doctrine, Plaintiffs must raise any claims "germane" to the foreclosure proceeding, in the state foreclosure court action. *See In re Mullarkey, 536 F.3d 215, 229 (3d Cir. 2008).*

13. A claim is "germane" to the foreclosure proceeding when it arises "out of the mortgage transaction which is the subject matter of the foreclosure action." *See id. at 229-30.*

14. However, and most importantly, the court in *Leisure Technology-Northeast v. Klingbeil Holding Co.*, illustrates that the entire controversy doctrine has a narrower application to foreclosure proceedings, extending only to "germane" counterclaims. *Leisure Technology-Northeast v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96 (1975).

15. "The use of the word 'germane' in the language of the rule undoubtedly was intended to limit counterclaims in foreclosure actions to claims arising out of the mortgage transaction which is the subject matter of the foreclosure action." Id.

16. Under *NJ Rule 4:64-5*, only germane counterclaims may be raised in foreclosure actions. That 'germaneness' requirement is not satisfied in this case.

17. None of the below claims could have been in the state court action, as they would not have been considered germane.

18. Because the claims before this court do not "arise from … the same transaction or series of transactions" that were the subject of the underlying state-court action, they should not be dismissed. *Wadeer*, 110 A.3d at 27.

19. Finally, as to any Statute of limitations, none would be applicable in this case as the damages were only recently learned of and as such, the applicable statutes would not have run.

## COUNT ONE – ALL DEFENDANTS
## VIOLATION OF RESPA, THREAT OF SHERIFF SALE RESPA/FDCPA, FRAUD AT THE INCEPTION

1.    Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2.    Defendants are in direct violation of the Real Estate Settlement Procedures Act ("RESPA") and RESPA's Regulation X.

3.    At the inception of the mortgage, TBI Mortgage acted as the straw lender and only subsidiary of Toll Brothers  is not a corporation and had no license to lend money in NJ.

4.    Further, Plaintiff was presented with a sales contract stating if he does not finance thru TBI Mortgage the price will increase by $30,000.00.

5.    As previously stated, there were several violations during the Foreclosure case by the attorneys representing Defendants, as well as by Safeguard when harassing Plaintiff's family.

6.    As such, there is no question that the loan modification package submitted in this case was prior to the thirty-seven-day deadline.

7.    Accordingly, Defendant is in violation of RESPA and Regulation X.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in their favor and against Defendant, as follows:

a.    Awarding Plaintiff actual damages against Defendant;
b.    Awarding Plaintiff damages for emotional distress against Defendant;
c.    Awarding Plaintiff attorneys' fees and costs against Defendant;
d.    Awarding Plaintiff punitive damages against Defendant;
e.    Imposing any other appropriate monetary sanctions against Defendant; and
f.    Any other relief that this Court deems just and proper.

**COUNT TWO**

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT AND THE FALSE CLAIMS ACT 31 U.S.C. §§ 3729 - 3733– AGAINST ALL DEFENDANTS**

8.      Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

9.      At all times relevant and material hereto, if Defendants did own the debt as alleged, then the Plaintiff was a consumer of the Defendants goods and services and as such the conduct of the Defendants and the transaction was governed by the New Jersey Consumer Fraud Act N.J.S. A. 56:8-1 et seq.

10.     At all times relevant and material hereto the Defendants did violate the New Jersey Consumer Fraud Act by engaging in deceptive and fraudulent practices as stated above.

11.     If the aforementioned responses to the QWR were forthcoming, it would be apparent the Sheriff's sale is a violation of The False Claims Act 31 U.S.C. §§ 3729 - 3733, as in case *Gonzalez v. Wilshire Credit Corp.*, Supreme Court of New Jersey, August 29, 2011, A-99 September Term 2009, 065564 that held:

> "Lending institutions and their servicing agents are not immune from New Jersey's Consumer Fraud Act, N.J.S.A. §§ 56:8-1 to 56:8-195; they cannot prey on the unsophisticated, those with no bargaining power, those bowed down by a foreclosure judgment and desperate to keep their homes under seemingly any circumstances."

12.     In *Cox v. Sears Roebuck*, September 15, 1994 138 N.J. 2 A-123 September term 1993." the NJ Supreme Court held: "The amendment to the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1* to 20, provides for private causes of action, with an award of treble damages, attorneys' fees, and costs."

13.     Upon "strict scrutiny" application, the Court would be compelled to protect Plaintiff against blatant fraud being perpetrated upon Defendant as well as the Court under the "color of law". To do otherwise would be a travesty of justice.

14.     "Like most remedial legislation, the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1 to 20*, should be construed liberally in favor of consumers."

15.     "An improper debt or lien against a consumer fraud plaintiff may constitute a loss under the Consumer Fraud Act, *N.J. Stat. Ann. §§ 56:8-1 to 20, (the Act)* because the consumer is not obligated to pay an indebtedness arising out of conduct that violates the Act."

16.     The judgment was reversed and remanded to trial court with treble the damages.

17.     The actions of the Defendants, individually and/or jointly, were performed in direct contradiction to their promises of superior services and conduct, but instead for their own financial self-interests, in detriment to the rights and position of the Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendant, as follows:

a.     Awarding Plaintiff actual damages against Defendant;
b.     Awarding Plaintiff damages for emotional distress against Defendant;
c.     Awarding Plaintiff attorneys' fees and costs against Defendant;
d.     Awarding Plaintiff punitive damages against Defendant;
e.     Imposing any other appropriate monetary sanctions against Defendant; and
f.     Any other relief that this Court deems just and proper.

## <u>COUNT THREE – ALL DEFENDANTS</u>
### <u>UNJUST ENRICHMENT</u>

18.     Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

19.     In establishing a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *VRG Corp. v. GKN Realty Corp.,* 135 NJ. 539, 554 (1994).

20.     Because of its misrepresentations, Defendant has been unjustly enriched at the expense of Plaintiff.

21.     Defendants either through intentional actions or gross negligence are attempting to gain possession of Plaintiff's house through a Sheriff sale.

22.     Accordingly, Defendants are attempting to receive a benefit through the sale of Plaintiff's home.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendant, as follows:

    a.    Awarding Plaintiff actual damages against Defendant;
    b.    Awarding Plaintiff damages for emotional distress against Defendant;
    c.    Awarding Plaintiff attorneys' fees and costs against Defendant;
    d.    Awarding Plaintiff punitive damages against Defendant;
    e.    Imposing any other appropriate monetary sanctions against Defendant; and
    f.    Any other relief that this Court deems just and proper.

### COUNT FOUR – ALL DEFENDANTS
### FRAUD UNDER §1341, §1343, §1344, AND §1951(A)

1.     Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

2.     At all times relevant and material hereto the Defendants devised or intended to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or

attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, – all of which is in violation of 18 U.S. Code § 1341.

3.      At all times relevant and material hereto, the Defendants did use electronic transmission, including fax, internet, money wire, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful taking, theft and attempted conversion of Plaintiff's' property – all of which is in violation of 18 U.S. Code § 1343.

4.      At all times relevant and material hereto the Defendants knowingly executed, or attempted to execute, a scheme or artifice— (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises – all of which is in violation of 18 U.S. Code § 1344.

5.      At all times relevant and material hereto the Defendants did obstruct, delay, or affect commerce … by robbery or extortion or attempts or conspires so to do … in furtherance of a plan or purpose – all of which is in violation of 18 U.S. Code § 1951(a).

6.      The right to the mortgage in a foreclosing entity's complaint must be filed after the assignment and it must own the Note and the Mortgage to foreclose on the property. *Carpenter v. Longan,* 83 U.S. 271, 16 Wall. 271, 21 L.Ed. 313 (1872) ("*The promissory note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries*

*the mortgage with it, while an assignment of the latter alone is a nullity, the mortgage following the note and a mortgage without a note is a nullity.").*

7.      In *Bosse v. Oklahoma Supreme Court of the United States*, October 11, 2016., No. 15-9173 the Court said "It is the Supreme Court's prerogative alone to overrule one of its precedents."

8.      *Bank of New York v. Alexander T. Cupo*, No. A-1212-10T2, Super. Court of NJ, Appellate Div., Feb 28, 2012, is very similar to the case at bar.

9.      In the *Cupo* case the Court held:

*10.     A mortgagee may establish standing by showing "that it is the holder of the note and the mortgage at the time the complaint was filed." Plaintiff must have "presented an authenticated assignment" dated prior to its filing of the original complaint. Here, the only evidence of the assignment is the assignment document dated June 19, 2007, which is dated thirty-nine days after plaintiff filed the complaint. As was the case in Deutsche Bank, plaintiff here does not have standing as an assignee to prosecute this foreclosure action." (internal citations omitted).*

11.     A ruling similar to the case at bar is *Bank of New York Mellon v. Davis*, dated October 16, 2017 Docket No. A-1006-16T1 Superior Court of New Jersey, Chancery Division.

12.     The underlying foreclosure matter is not distinguishable from that case and as such, should have been ruled in a similar manner.

13.     The loan in this case was never consummated properly. Because the original Note with the Wet Ink signature was never provided.

14.     The law grants authority to collect the indebtedness on a mortgage and note, only to the party who can prove standing to collect through consideration paid.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendant, as follows:

g.    Awarding Plaintiff actual damages against Defendant;
h.    Awarding Plaintiff damages for emotional distress against Defendant;
i.    Awarding Plaintiff attorneys' fees and costs against Defendant;
j.    Awarding Plaintiff punitive damages against Defendant;
k.    Imposing any other appropriate monetary sanctions against Defendant; and
l.    Any other relief that this Court deems just and proper.

## COUNT FIVE – DITECH FINANCIAL LLC, GREEN TREE SERVICING LLC, FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE), AND BANK OF AMERICA – VIOLATION OF THE FDCPA

1.    Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

2.    The Defendants have each acted in the capacity of debt collectors as defined by the Federal FDCPA for none of the Defendants have evidence of being a creditor for the "mortgage loan" in dispute, and each Defendant has: (i) made false representations of the character, amount, and legal status of the debt in dispute, and the services rendered or compensation which may be lawfully received by the defendants as debt collectors for the collection of the debt in dispute; (ii) made the representation or implication that nonpayment of the debt in dispute will result in the sale of the subject property; AND (iii) used false representations and deceptive means to collect or attempt to collect the debt in dispute by willfully misrepresenting Bank of America as the "owners and holders" of the debt in dispute knowing otherwise to be true.

3.    Defendants commenced two foreclosure debt collection actions by making false representations as to the character, amount, and legal status of the debt in dispute, and resorted to false representations and deceptive means to collect the debt in dispute by willfully misrepresenting itself to be the "owner" of the debt, knowing otherwise to be true.

4.    Additionally, there were two payments made prior to the initiation of the

Foreclosure that were not included and allowed for the Foreclosure to proceed.

5.      The Plaintiffs aver that the unlawful debt collection practices by the Defendants constitutes false and misleading representations in violation of the Federal FDCPA and has caused injury to the Plaintiffs as contemplated by 15 U.S.C. §1692 et seq., in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud *in factum* debt, and other costs to defend the Plaintiffs' property and reputation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff request that this Court enter judgment in her favor and against Defendant, as follows:

   a.   Awarding Plaintiffs actual damages against Defendants;
   b.   Awarding Plaintiffs damages for emotional distress against Defendants;
   c.   Awarding Plaintiffs attorneys' fees and costs against Defendants;
   d.   Awarding Plaintiffs punitive damages against Defendants;
   e.   Imposing any other appropriate monetary sanctions against Defendants; and
   f.   Any other relief that this Court deems just and proper.

## COUNT SIX – ALL DEFENDANTS
## VIOLATION OF THE FCRA

1.      Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2.      Defendants has violated the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681, et seq.

3.      At all times pertinent hereto, Defendants was a "person" as that term is defined by 15 U.S.C. § 1681a(b).

4.      During the course of the issues in this matter, Defendants reported false and derogatory information to a number of credit reporting agencies regarding Plaintiff' account.

5.      Thus, Defendants violated sections 1681n and 1681o of the FCRA by engaging in the following conduct:

a. willfully and negligently reporting false derogatory information to various credit reporting agencies regarding Plaintiff' account;

b. willfully and negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

c. willfully and negligently failing to review all relevant information concerning Plaintiff' account provided to Defendants;

d. willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

e. willfully and negligently failing to report the inaccurate status of the inaccurate information to all credit reporting agencies;

f. willfully and negligently failing to properly participate, investigate, and comply with the reinvestigations that were conducted by any and all credit reporting agencies concerning the inaccurate information disputed by Plaintiff;

g. willfully and negligently failing to provide any and all credit reporting agencies with the factual information and evidence that Plaintiff submitted to Defendants, and which proved that the information concerning Plaintiff' credit reports was inaccurate;

h. willfully and negligently continuing to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to the credit reporting agencies and other entities; and

i. willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1581s-2(b).

6. Defendants' conduct was a direct and proximate cause, as well as a substantial factor, in causing the serious injuries, damages, and harm to Plaintiff in this matter.

7. Accordingly, Defendants has violated the FCRA and Plaintiff is entitled to relief herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

a. Awarding Plaintiff actual damages against Defendants;

b. Awarding Plaintiff damages for emotional distress against Defendants;

c. Awarding Plaintiff attorneys' fees and costs against Defendants;

d. Awarding Plaintiff punitive damages and treble damages against Defendants;

e. Imposing any other appropriate monetary sanctions against Defendants; and

f. Any other relief that this Court deems just and proper.

## COUNT SEVEN – ALL DEFENDANTS
## VIOLATIONS OF NEW JERSEY CIVIL RICO (N.J.S.A. 2C:41-1 ET SEQ.), AND FEDERAL CIVIL RICO (18 USC §1962(C)); ACTIONABLE PURSUANT TO N.J.S.A. 2C:41-4C, AND 18 USC § 1964(C);

1.      The Plaintiff adopts the allegations set forth above as though fully set forth herein by reference.

2.      The Defendants designated in count seven (7) constitute an "Enterprise" as defined in N.J.S.A. 2C:41-1 et seq. and 18 U.S.C. §1961(4).

3.      The enterprise and or enterprises have an existence apart from and beyond the racketeering activity complained of in this action.

4.      The Defendants designated in count seven (7) violated the New Jersey and Federal Civil RICO statutes by conducting or participating, directly or indirectly, in the conduct of the affairs of an enterprise or enterprises, through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c) and -2(d), and 18 U.S.C. §1962(c), as set forth within as though fully incorporated herein by reference.

5.      The acts by the Defendants designated in count seven (7) constitutes a pattern of racketeering activity that has continued and escalated beginning in or around when the and continues to present date.

6.      The acts by the defendants designated in count seven (7) constitutes prohibited activities in violation of N.J.S.A. 2C:41-2 and 18 U.S.C. §1962(c) for the Defendants have received income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which they have participated as a principal within the meaning of N.J.S.A 2C:2-6 and 18 U.S.C. §1961(6) to use or invest, directly or indirectly, any part of the income, or the proceeds of the income, in acquisition of any interest in, or the establishment or operation of any enterprise which is engaged in or the activities of which affect trade or commerce.

7.      The acts by the Defendants constitutes deceptive business practices in violation of

N.J.S.A. 2C:21-7 for the Defendants made false or misleading written statements for the purpose of obtaining property, and false or misleading written statements for the purpose of promoting the sale of securities, and omitted information required by law to be disclosed in written documents relating to securities.

8.      The acts by the Defendants constitutes tampering with or fabricating physical evidence in violation of N.J.S.A. 2C:28-6 for the defendants altered and or concealed records, documents, or other things of physical substance with purpose to impair its verity or availability in such proceedings or investigations; and the defendants made, devised, prepared, presented, offered or used articles, objects, records, documents or other things of physical substance knowing them to be false and with purpose to mislead a public servant who is engaged in such proceeding or investigation.

9.      The acts by the Defendants constitutes tampering with public records or information in violation of N.J.S.A. 2C:28-7 for the defendants knowingly made a false entry in, or false alteration of, any record, document or thing received or kept by, the government for information or record, and the Defendants made, presented, offered for filing, or used a record, document or thing knowing it to be false, and with purpose that it be taken as a genuine part of information or records.

10.     The acts by Defendants constitutes frauds relating to public records and recordable instruments in violation of N.J.S.A. 2C:21-3 for the defendants offered a false instrument for filing, knowing the written instrument contains a false statement or false information, and offered or presented it to a public office or public servant with knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office or public servant.

11.     The acts by the Defendants constitutes securing execution of documents by

deception in violation of N.J.S.A. 2C:21-16 for the defendant caused or induced the Plaintiff to execute instruments affecting, purporting to affect, or likely to affect the pecuniary interest of the Plaintiff by means of deception as to the contents of the instruments.

12.    The acts by the Defendants constitutes knowledge inferred in violation of N.J.S.A. 2C:21-26 for the defendants transported or possessed the Plaintiff's property in a fashion inconsistent with the ordinary or usual means of transportation or possession of such property and where the property is discovered in the absence of any documentation or other indicia of legitimate origin or right to such property.

13.    The acts by the Defendants constitutes conspiracy in violation of N.J.S.A. 2C:5-2 for the defendants agreed with each other, and or other persons, that they or one or more of them will engage in conduct which constitutes such crime, and or they agreed to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

14.    The acts by the Defendants constitutes forgery in violation of N.J.S.A. 2C:21-1 for the defendants, with purpose to defraud or injure the Plaintiff, with knowledge that they were facilitating a fraud or injury, they: (1) Altered and or changed instruments of another without their authorization; (2) made, completed, executed, authenticated, issued or transferred writings so that it purports to be the act of another who did not authorize that act or of a fictitious person, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or (3) Uttered writings which they knew to be forged in a manner specified above.

15.    The acts by the Defendants constitutes impersonation and identity theft in violation of N.J.S.A. 2C:21-17 for the defendants obtained personal identifying information pertaining to the Plaintiff and used that information, or assisted another person in using the information, in order

to assume the identity of or represent themselves as the Plaintiff, without that Plaintiff's authorization and with the purpose to fraudulently obtain or attempt to obtain a benefit or services by using the name of Plaintiff.

16.     The acts by the Defendants constitutes mail fraud in violation of 18 U.S.C. §1341 for the defendants devised a scheme to defraud, obtain money, or the subject property by means of false or fraudulent pretenses, representations, or promises, to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use counterfeit obligations, securities, for the purpose of executing such scheme or artifice, placed in post offices or authorized depository for mail matter, to be sent or delivered by the Postal Service, deposited, or caused to be deposited, to be sent or delivered by private or commercial interstate carrier, or knowingly caused to be delivered by mail or such carrier.

17.     The acts by the Defendants constitutes fictitious name in violation of 18 U.S.C. §1342 for the defendants, for the purpose of conducting, promoting, or carrying on by means of the Postal Service, any scheme or device mentioned in section 1341, or any other unlawful business, used or assumed, or requested others to be addressed by, fictitious, false, or assumed titles, or names, other than their own proper name.

18.     The acts by the Defendants constitutes wire fraud in violation of 18 U.S.C. §1343 for the defendants devised or intended to devise a scheme or artifice to defraud, for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmitted by means of wire in interstate commerce, writings for the purpose of executing such scheme or artifice.

19.     The acts by the Defendants constitutes transportation of stolen goods, securities, moneys, and or articles used in counterfeiting in violation of 18 U.S.C. §2314 for the defendants transported, transmitted, or transferred in interstate commerce, securities of the value of $5,000 or

more, knowing the same to have been stolen, converted or taken by fraud, and devised a scheme or artifice to defraud, for obtaining money or property from the Plaintiff by means of false or fraudulent pretenses, representations, or promises, transported or caused to be transported interstate in the execution or concealment of a scheme or artifice to defraud the Plaintiff of money or property having a value of $5,000 or more, with unlawful or fraudulent intent, transported in interstate commerce falsely made, forged, altered, or counterfeited securities knowing the same to have been falsely made, forged, altered, or counterfeited.

20.     The acts by the Defendants constitutes interference with commerce by threats or violence in violation of 18 U.S.C. § 1951 for the defendants have: (a) obstructed, delayed, or affected commerce by robbery or extortion or attempted or conspired so to do, or committed or threatened physical removal of Plaintiffs from the subject property, and the taking of the subject property under color of official right.

21.     The acts by the Defendants constitutes misprision of felony in violation of 18 U.S.C. § 4 for the defendants had knowledge of the actual commission of a felony cognizable by a court of the United States, and concealed said knowledge, and did not as soon as possible make known the same to some judge or other person in civil or authority under the United States.

22.     The acts by Defendants constitutes concealment of assets, false oaths and claims in violation of 18 U.S.C. §152 for the Defendants (1) knowingly and fraudulently concealed from the Court, the existence and location of property belonging to the estate of a debtor; (2) knowingly and fraudulently made false oaths or accounts in or in relation to the Plaintiff's case under title 11; (3) knowingly and fraudulently made false declarations, certificates, verifications, or statements under penalty of perjury as permitted under section 1746 of title 28, in relation to the Plaintiff's case under title 11; and (4) knowingly and fraudulently presented false claims for proof against the Plaintiff, and used such claim in the Plaintiff's case under title 11, in a personal capacity or as

or through an agent, proxy, or attorney.

23.    The acts by the Defendants constitutes alteration and falsification of records in bankruptcy in violation of 18 U.S.C. §1519 for the Defendants knowingly altered, concealed, covered up, falsified, and made false entries of record and documents, with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of the Plaintiff's case filed under title 11.

24.    The acts by the Defendants constitutes conspiracy against rights in violation of 18 U.S.C. §241 for the defendants conspired to injure, oppress, threaten, or intimidate the Plaintiff in the free exercise or enjoyment of rights or privilege secured to Plaintiffs by the Constitution and laws of the United States, including but not limited to: (i) the right to contract; (ii) the right to own, maintain, and be secure in Plaintiffs' property right from unlawful seizures; AND (iii) to be free of usury.

25.    The Plaintiff avers that the aforementioned acts on the part of the defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the cross-plaintiff.

26.    The acts by the Defendants violates N.J.S.A. 2C:41-1 et seq. and 18 USC §1962(c)), and has caused injury to the Plaintiff as contemplated by N.J.S.A. 2C:41-4c, and 18 USC § 1964(c), in actual damages of emotional distress, loss of monies paid by the Plaintiff towards a fraud in factum "mortgage transaction", and other costs to defend the Plaintiff's property.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and against Defendants, as follows:

g.    Awarding Plaintiffs actual damages against Defendants;
h.    Awarding Plaintiffs damages for emotional distress against Defendants;
i.    Awarding Plaintiffs attorneys' fees and costs against Defendants;
j.    Awarding Plaintiffs punitive damages against Defendants;

k.    Awarding Plaintiffs treble damages against Defendants

l.    Imposing any other appropriate monetary sanctions against Defendants; and Any other relief that this Court deems just and proper.

## COUNT EIGHT – LACK OF DUE PROCESS – ALL DEFENDANTS

1. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2. The case <u>Goldberg v. Kelly</u>, 397 US 254 (1970) the Supreme Court held "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses".

3. In New Jersey, a litigant in civil proceedings is entitled to a fair hearing, imbued with the protections of due process. *See A.B. v. Y.Z.*, 184 N.J. 599, 604 (2005); *H.E.S. v. J.C.S.*, 175 N.J. 309, 321-23 (2003).

4. The due process guarantee expressed in the Fourteenth Amendment to the United States Constitution requires assurance of fundamental fairness during legal proceedings. U.S. Const. amend. XIV, § 1.

5. This includes the opportunity to be heard and requires "procedural safeguards including the right to cross-examine adverse witnesses and the right to call witnesses . . . ." *Peterson v. Peterson*, 374 N.J. Super. 116, 124 (App. Div. 2005).

6. Due process requires that the procedures by which laws are applied must be evenhanded, so that individuals are not subjected to the arbitrary exercise of government power. Marchant v. Pennsylvania R.R., 153 U.S. 380, 386 (1894). Thus, where a litigant had the benefit of a full and fair trial in the state courts, and his rights are measured, not by laws made to affect him individually, but by general provisions of law applicable to all those in like condition, he is not deprived of property without due process of law, even if he can be regarded as deprived of his property by an adverse result. Id.

7. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978).

8. "[P]rocedural due process rules are shaped by the risk of error inherent in the truth-finding process as applied to the generality of cases." Mathews v. Eldridge, 424 U.S. 319, 344 (1976).

9. Thus, the required elements of due process are those that "minimize substantively unfair or mistaken deprivations" by enabling persons to contest the basis upon which a state proposes to deprive them of protected interests. Fuentes v. Shevin, 407 U.S. 67, 81 (1972).

10. At times, the Court has also stressed the dignitary importance of procedural rights, the worth of being able to defend one's interests even if one cannot change the result. Carey v. Piphus, 435 U.S. 247, 266–67 (1978); Marshall v. Jerrico, Inc., 446 U.S. 238, 242 (1980); Nelson v. Adams, 529 U.S. 460 (2000) (amendment of judgement to impose attorney fees and costs to sole shareholder of liable corporate structure invalid without notice or opportunity to dispute).

11. The core of these requirements is notice and a hearing before an impartial tribunal.

12. Additionally, the state of New Jersey, there are specific requirements per rule 4:64-1 and these rules apply through final judgment, including proper service.

13. As stated previously, many of these rules were in violation.

14. As such, the Defendants have all worked together to try and deny Plaintiff his Due Process, with all of the aforementioned actions taken.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in their favor and against Defendants, as follows:

        a.     Awarding Plaintiff actual damages against Defendants;

        b.     Awarding Plaintiff damages for emotional distress against Defendants;

     c.     Awarding Plaintiff attorneys' fees and costs against Defendants;

     d.     Awarding Plaintiff punitive damages and treble damages against Defendants;

     e.     Imposing any other appropriate monetary sanctions against Defendants; and

     f.     Any other relief that this Court deems just and proper.

## COUNT NINE -ALL DEFENDANTS
### Breach of Contract – Mortgage

1. Plaintiff hereby incorporates by reference all preceding paragraphs as if set forth at length herein.

2. At all times relevant and material hereto the Defendants did breach the contractual terms of the loan/note by engaging in deceptive and fraudulent practices as hereinbefore set forth.

3. Include references in note – lack of ownership, par. 20, 22 (lack of proper notice)

     **WHEREFORE,** the Plaintiff demand judgment against all Defendants, individually, jointly and severally for damages, interests and costs of suit including:

     a.     Punitive and/or treble damages;

     b.     Damages as permitted by statute;

     c.     Counsel fees;

     d.     All other relief this Court deems necessary and just.

## COUNT TEN
### INTMIDATION AND PROPERTY DAMAGE PRUSUANT TO  2A:14-1 – Safeguard Property

1. Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2. New Jersey Revised Statutes section 2A:14-1 says that "Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14-2 and 2A:14-3 of this Title, or for recovery upon a

contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."

3.     Defendants acted intentionally in taking the aforementioned actions, including breaking in to Plaintiff's home, harassing Plaintiff and his family, taking pictures around the house and causing all of the other aforementioned actions.

4.     Further, Defendant caused the obstruction of an insurance claim for water damage for $3,810.00.

5.     Plaintiff seeks compensatory damages for particular material, economic or financial losses suffered directly by her as the proximate result of the injury.

6.     The conduct of Defendant was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, damages, and harm to Plaintiff that are outlined more fully above and, as a result, Defendant is liable to compensate Plaintiff for the full amount of actual, compensatory, and punitive damages, as well as other such relief, as permitted by law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against Defendant, as follows:

a.     Awarding Plaintiff actual and compensatory damages against Defendants;
b.     Awarding Plaintiff damages for emotional distress against Defendants;
c.     Awarding Plaintiff attorneys' fees and costs against Defendants;
d.     Awarding Plaintiff punitive and presumed damages against Defendants;
e.     Imposing any other appropriate monetary sanctions against Defendants; and
f.     Any other relief that this Court deems just and proper.

<u>COUNT ELEVEN</u>
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – Safeguard Property**

1.      Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2.      Defendants acted intentionally in taking the aforementioned actions.

3.      The actual damages portion of RESPA can be interpreted in a manner similar to the Fair Debt Collection Practices Act ("FDCPA"). *Geoffrion v. Nationstar Mortg. LLC*, 182 F. Supp. 3d 648, 664 (E.D. Tex. 2016). n.8 (*citing McLean v. GMAC Mortg. Corp.*, 595 F. Supp. 2d 1360, 1370 (S.D. Fla. 2009), aff'd, 398 Fed. App'x 467 (11th Cir. 2010)).

4.      Plaintiff may therefore establish emotional damages under RESPA via HIS own testimony. *Geoffrion*, 182 F. Supp. 3d at 666 n.8(citations omitted) (rejecting defendant's argument that plaintiffs could not recover mental anguish damages due to lack of expert testimony or health record evidence); *see also Guajardo v. GC Servs*., LP, 498 Fed. App'x 379, 385 (5th Cir. 2012) (finding sufficient evidence to support award of damages for mental anguish and emotional distress under FDCPA even where jury heard contradictory proof from plaintiff).

5.      "[o]f the circuits that have addressed the issue, two have indicated that emotional distress damages should be allowed, while no circuit appears to have ruled that emotional damages are not allowed." *Geoffrion*, 182 F. Supp. 3d at 663 (*citing Houston v. U.S. Bank Home Mortg. Wisconsin Servicing*, 505 Fed. App'x 543, 548, 548 n.6 (6th Cir. 2012) and *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 696 (7th Cir. 2011)).

6.      In *Houston,* the Sixth Circuit stated that it found "nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven." 505 Fed. App'x at 548 (holding that genuine issue of material fact existed regarding whether defendant caused plaintiff to suffer emotional damages

under RESPA where plaintiff averred that she experienced "stress, mental anguish, embarrassment, and humiliation.").

7.    The elements of the common-law cause of action for intentional infliction of emotional distress were set forth definitively in <u>Buckley v. Trenton Saving Fund Society</u>, 111 N.J. 355 (1988).

8.    First, Plaintiff must prove that defendant acted intentionally or recklessly. <u>Id. at 366.</u>

9.    Defendant must intend "both to do the act and to produce emotional distress," or he must "act recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." <u>Ibid.</u>

10.   Second, defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Ibid.</u>

11.   Third, Plaintiff must prove defendant's conduct was a proximate cause of Plaintiff' emotional distress. <u>Ibid.</u>

12.   Fourth, "the emotional distress suffered by Plaintiff must be so severe that no reasonable [person] could be expected to endure it." <u>Id. at 366-67.</u>

13.   As to the first element, there is no question that these actions were intentional, and far from negligent or unintended acts.

14.   As to the second element, leaving a person with fear of being locked out of their house improperly by declaring it abandoned, when it was known to not be the case would qualify.

15.   As to the third claim, Plaintiff's distress only began after these actions occurred.

16.   Finally, this distress is certainly severe, as discussed above.

17.    For these reasons, it seems clear that Plaintiff has suffered intentional infliction of emotional distress from the Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and against Defendant, as follows:

    a.    Awarding Plaintiff actual and compensatory damages against Defendants;
    b.    Awarding Plaintiff damages for emotional distress against Defendants;
    c.    Awarding Plaintiff attorneys' fees and costs against Defendants;
    d.    Awarding Plaintiff punitive and presumed damages against Defendants;
    e.    Imposing any other appropriate monetary sanctions against Defendants; and
    f.    Any other relief that this Court deems just and proper.

## COUNT TWELVE
## RESPONDEAT SUPERIOR – ALL DEFENDANTS

1.    Plaintiff hereby incorporates by reference all preceding allegations as if fully set forth at length herein.

2.    At all material times hereto, the aforementioned Defendants, either individually or jointly, employed Defendant Safeguard Property.

3.    The established doctrine of respondeat superior provides that an employer is obligated to persons harmed by employees acting in the course of their employment.

4.    The "essence" of vicarious liability on the basis of respondeat superior is control. *Galvao v. G.R. Robert Constr. Co.*, 179 N.J. 462, 467 (2004).

5.    Underlying the doctrine is the principle that an employer who exercises control over an employee in the performance of his duties, "must answer for any injury that a third person may sustain from it." *Carter v. Reynolds*, 175 N.J. 402, 408 (2003). Vicarious liability "'is a rule of policy, a deliberate allocation of risk.'" *Carter v. Reynolds*, 345 N.J. Super. 67, 75 (App. Div. 2001) (*quoting Hinman v. Westinghouse Elec. Co.,* 88 Cal. Rptr. 188, 190 (Cal. 1970)), aff'd, 175 N.J. 402 (2003).

6.      Restatement 228(1) describes four factors that support a finding that an employee's act is within the scope of her employment: (1) the act is of a kind the employee is hired to perform, (2) the act occurs within authorized time and space limits, (3) the act is actuated at least in part by a purpose to serve the employer, and (4) if force is intentionally used it is not unexpectable.

7.      In this case, the above facts show all four factors have been met.

8.      As to the first the Defendants had, at all material times hired Defendant Safeguard Property as their employee, and no party will realistically contest that fact.

9.      As to the second, Safeguard Property was performing their "work" at the order of some of the other Defendants, either individually or jointly.

10.     As to the third, the purported purpose was to see if the property was abandoned, but instead threated to claim it was abandoned improperly and to scare Plaintiff and his wife.

11.     As to the fourth, it is entirely not unexpectable these actions would have been taken and as such, the employer(s) should be held responsible.

12.     As can be seen, there is a strong case for Respondeat Superior and as such, the employer(s) should be held responsible.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs requests that this Court enter judgment in her favor and against Defendant, as follows:

a.      Awarding Plaintiff actual and compensatory damages against Defendants;
b.      Awarding Plaintiff damages for emotional distress against Defendants;
c.      Awarding Plaintiff attorneys' fees and costs against Defendants;
d.      Awarding Plaintiff punitive and presumed damages against Defendants;
e.      Imposing any other appropriate monetary sanctions against Defendants; and
f.      Any other relief that this Court deems just and proper.

                                                    __/s/ Joshua Thomas, Esq._____
                                                    Joshua Thomas, Esq.
                                                    *Attorneys for Plaintiff*

Dated: October 15, 2018