**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
Brian P. Matthews, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone   1+ 609 987 0050
Facsimile    1+ 609 951 0824

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUBOS NAPRSTEK, | Civil Action No. 2:18-CV-11442-CCC-SCM |
| Plaintiff, | |
| v. | DOCUMENT ELECTRONICALLY FILED |
| DITECH FINANCIAL LLC, DT HOLDINGS LLC, GREENTREE SERVICING LLC, WALTER INVESTMENT MANAGEMENT CO., FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE), TBI, TOLL BROTHERS, BANK OF AMERICA, and SAFEGUARD PROPERTY, | *Motion Returnable:* |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ...................................................................................3

    A.    The Underlying Note and Mortgage ....................................................3

    B.    The Naprsteks' Default on the Note and the Foreclosure
Action ..................................................................................................4

        (i)    The First Foreclosure Action ....................................................4

        (ii)    Ditech's Second Foreclosure Action and the
Naprsteks' Failed Motion to Dismiss ......................................5

        (iii)    The Naprsteks' Numerous Motions to Vacate Their
Default.......................................................................................5

        (iv)    Entry of Final Judgment............................................................6

        (v)    The Naprsteks' Post-Judgment Motions and the
Within Action...........................................................................6

LEGAL ARGUMENT........................................................................................8

I.    STANDARDS OF REVIEW ON A MOTION TO DISMISS ......................8

    A.    This Court Lacks Subject Matter Jurisdiction Under Fed. R.
Civ. P. 12(b)(1)...................................................................................8

    B.    The Complaint Fails to State A Claim Upon Which Relief
May Be Granted Under Fed. R. Civ. P. 12(b)(6) .................................9

II.    PLAINTIFF'S AMENDED COMPLAINT IS BARRED BY THE
ENTRY OF FINAL JUDGMENT IN THE STATE COURT
FORECLOSURE ACTION......................................................................12

    A.    The Rooker-Feldman Doctrine Deprives This Court Of
Subject Matter Jurisdiction...............................................................13

    B.    Plaintiff's Claims Are Barred by the Younger Doctrine....................15

    C.    The Colorado River Abstention Doctrine Applies to Bar
Plaintiff's Claims..............................................................................16

    D.    Plaintiff's Complaint Is Barred by the Entire Controversy
Doctrine ............................................................................................18

    E.    Plaintiff's Claims Are Barred by Res Judicata and Collateral
Estoppel ............................................................................................21

III.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR
       RELIEF AGAINST DEFENDANTS ............................................................23

       A.   Plaintiff Has No Claim Under the Real Estate Settlement
            Procedures Act .................................................................................23

            (i)    Plaintiff has Not Identified Any Damages From a
                   Purported RESPA Violation ....................................................24

            (ii)   Plaintiff's RESPA Claims Are Likely Barred by the
                   Statute of Limitations.............................................................24

       B.   Plaintiff's FDCPA Claim Fails .........................................................25

            (i)    Plaintiff has Failed to State a Claim under the FDCPA ..........26

            (ii)   Defendants are Exempt from the FDCPA because
                   they are Collecting Their Own Debt .......................................26

       C.   Plaintiff Fails To State a Claim for Common Law Fraud...................27

            (i)    Plaintiff's Fraud Claim is Barred by the Statute of
                   Limitations .............................................................................27

            (ii)   Plaintiff's Fraud Claim is Inadequately Pleaded .....................28

       D.   Plaintiff's Claims Under the CFA Fail...............................................29

       E.   Plaintiff's "Unjust Enrichment" Claim Fails .....................................31

       F.   Plaintiff Fails to State a Claim for Violation of the FCRA................32

            (i)    Plaintiff Cannot Enforce the Furnisher's Obligation to
                   Provide "Accurate Information" .............................................33

            (ii)   Plaintiff Fails to State a Claim for "Failure to
                   Investigate" ............................................................................34

       G.   Plaintiff's RICO Conspiracy Claim is Legally Deficient ..................36

       H.   Plaintiff's "Lack of Due Process" Claim is Patently
            Frivolous and Must be Dismissed ......................................................38

       I.   Plaintiff Fails to State a Claim for Breach of Contract ......................38

       J.   Plaintiff's Claim for Respondeat Superior in Connection
            with Purported Intentional Infliction of Emotional Distress
            Fails ....................................................................................................39

# <u>TABLE OF AUTHORITIES</u>

**<u>PAGE(S)</u>**

**Cases**

*Acampora v. Boise Cascade Corporation*,
  653 F. Supp. 66 (D.N.J. 1986) ................................................................38

*ACLU-NJ v. Township of Wall*,
  246 F.3d 258 (3d Cir. 2001) ................................................................9

*Allia v. Target Corp.*,
  2008 WL 1732964 (D.N.J. April 10, 2008)................................................40

*Aly v. Garcia*,
  333 N.J. Super. 195 (App. Div. 2000) ................................................42

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (1991)................................................................37

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................10

*Baker v. Inter Nat. Bank*,
  2012 WL 174956 (D.N.J. Jan. 19, 2012)................................................31

*Banco Popular N. Am. v. Gandi*,
  184 N.J. 161 (2005) ................................................................28

*Bank of Am., N.A. v. Westheimer*,
  No. 12-7080 (JAP), 2014 BL 55500 (D.N.J. Feb. 28, 2014) ................................12

*Bartley v LVNV Funding, LLC*,
  2010 WL 2629072 (D.N.J. June 28, 2010)................................................35

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................10, 11, 12

*Bishop v. Okidata, Inc.*,
  864 F.Supp. 416 (D.N.J. 1994)................................................................41

*Buckley v. Trenton Savings Fund Society*,
   111 N.J. 355 (1988) .................................................................................40, 41

*Burrell v, DFS Servs., LLC*,
   753 F. Supp. 2d 438 (D.N.J. 2010) .........................................................33, 34, 35

*Caputo v. Nice-Pak Prods., Inc.*,
   300 N.J. Super. 498 (App. Div. 1997) ...............................................................31

*Castro v. NYT Television*,
   370 N.J. Super. 282 (App. Div. 2004) ...............................................................30

*Cogdell v. Hosp. Ctr. at Orange*,
   116 N.J. 7 (1989) ...............................................................................................19

*Cohen v. Kurtzman*,
   45 F. Supp. 2d 423 (D.N.J. 1999) .......................................................................9

*Colorado River Water Conservation District v. U.S.*,
   424 U.S. 800 (1976)...........................................................................................17

*Daimler Chrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)............................................................................................8

*Daubs v. Mercedes-Benz USA, LLC*,
   378 N.J. Super. 105 (App. Div. 2005) ...............................................................29

*Dawson v. Dovenmuehle Mortg., Inc.*,
   2002 WL 501499 (E.D.Pa. Apr. 3, 2002)..........................................................27

*DiPietro v. Landis Title Co.*,
   No. 11-5110, 2012 WL 2116404 (D.N.J. June 11, 2012) ..................................18

*District 1199P Health and Welfare Plan v. Janssen, L.P.*,
   784 F.Supp. 2d 508 (D.N.J. 2011), 518-19 .......................................................36

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983)...........................................................................................13

*DiTrolio v. Antiles*,
   142 N.J. 253 (1995) ...........................................................................................19

*Douglass v. Convergent Outsourcing*,
  765 F.3d 299 (3d Cir 2014) ...............................................................26

*Downey v. Perrault*,
  No. 09-1018, 2009 WL 3030051 (D.N.J. Sep. 15, 2009)............................16, 18

*Edwards v. Equable Ascent, FNCL, LLC*,
  No. 11-cv-2638 (CCC), 2012 WL 1340123 (D.N.J. Apr. 16, 2012)................36

*Fregara v. Jet Aviation Business Jets*,
  764 F.Supp. 940 (D.N.J. 1991) .........................................................41

*Gelman v. State Farm Mut. Auto Ins. Co.*,
  583 F.3d 187 (3d Cir. 2009) .............................................................32

*Gennari v. Weichert Co. Realtors*,
  148 N.J. 582 (1997) .......................................................................28, 30

*Great Falls Bank v. Pardo*,
  263 N.J. Super. 388 (Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542
  (App. Div. 1994)...........................................................................12, 20

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP*,
  615 F.3d 159 (3d Cir. 2010) ............................................................13, 14

*Griffin v. Tops Appliance City*,
  337 N.J. Super. 15 (App. Div. 2001) ..........................................40, 41, 42

*Gruccio v. Baxter*,
  135 N.J. Super. 290 (Law Div. 1975).................................................30

*Hansford v. Bank of America*,
  2008 WL 4078460 (E.D. Pa. 2008) ...................................................15

*Hawk v. Carrington Mortg. Servs., LLC*,
  NO. 3:14-1044, 2016 BL 203621 (M.D. Pa. June 23, 2016) ........................24

*Henderson v. Equable Ascent Fin. LLC*,
  No. 11-cv-3576 (SRC), 2011 WL 5429631 (D.N.J. Nov. 4, 2011) ................35

*Holder v. Bank of America National Association*,
  Case No.: 2:18-cv-13095-JLL-JAD (D.N.J. September 17, 2018) ....................2

*Horizon Blue Cross Blue Shield of New Jersey v. Medco Health
     Solutions*,
     2007 WL 1238361 (Law Div. Apr. 16, 2007) ....................................................32

*Huertas v. Galaxy Asset Mgmt.*,
     641 F.3d 28 (3d Cir. 2011) ....................................................33, 34, 37

*Hutchinson v. Delaware Sav. Bank, FSB*,
     410 F. Supp. 2d 374 (D.N.J. 2006) ....................................................24

*In re Advanta Corp. Sec. Litig.*,
     180 F.3d (3d. Cir. 1999) ....................................................38

*In re Cendant Corp. Sec. Litig.*,
     139 F.Supp. 2d 585 (D.N.J. 2001) ....................................................39

*In re Estate of Gabrellian*,
     372 N.J. Super. 432 (App. Div. 2004) ....................................................21

*In re K-Dur Antitrust Litig.*,
     338 F.Supp.2d 517 (D.N.J. 2004) ....................................................31

*In re Knapper*,
     407 F.3d 573 (3d Cir. 2005) ....................................................13

*In re Mullarkey*,
     536 F.3d 215 (3d Cir. 2008) ....................................................20

*In re Rusch*,
     2010 WL 5394789 (Bankr. D.N.J. 2010) ....................................................14

*In re Sabertooth*,
     443 B.R. 671 (Bankr. E.D. Pa. 2011) ....................................................13

*James v. Wells Fargo Bank, N.A.*,
     2011 WL 1874707 (D.Utah May 17, 2011) ....................................................27

*Klein v. U.S. Bank*,
     2010 WL 5018881 (M.D. Pa. 2011) ....................................................15

*Krajewski v. American Honda Fin. Corp.*,
     557 F. Supp. 2d 596 (E.D. Pa. 2008) ....................................................35

*Kushner v. Wachovia Bank, N.A.*,
   2010 WL 5094511 (D.N.J. 2010) ........................................................15

*Lazaridis v. Wehmer*,
   591 F.3d 666 (3rd Cir. 2010) ..............................................................15

*Leisure Tech. v. Klingbeil Holdings Co.*,
   137 N.J. Super. 353 (App. Div. 1975) .................................................20

*Lemaldi v. DeTomaso of America, Inc.*,
   156 N.J. Super. 441 (Law Div. 1978) ..................................................40

*Madera v. Ameriquest Mortgage Co.*,
   586 F.3d 228 (3d Cir. 2009) ................................................................14

*Manhattan Woods Golf Club, Inc. v. Arai*,
   312 N.J. Super. 573 (App. Div. 1998) .................................................19

*Martinez v. Granite State Mgmt. & Res.*,
   2008 WL 5046792 (D.N.J. November 20, 2008) .................................35

*McLean v. GMAC Mortg. Corp.*,
   398 F. App'x 467 (11th Cir. 2010) ......................................................24

*McNally v. Providence Washington Ins. Co.*,
   304 N.J. Super. 83 (App. Div. 1997) ...................................................19

*Migra v. Warren City School Dist. Bd. Of Ed.*,
   465 U.S. 75 (1984) ..............................................................................22

*Mori v. Hartz Mountain Dev. Corp.*,
   193 N.J. Super. 47 (App. Div. 1983) ...................................................20

*Napoli v. HSBC Mortg. Servs., Inc.*,
   No. 12-CV-222 (RMB-AMD), 2012 BL 218846 (D.N.J. Aug. 27.
   2012) ....................................................................................................20

*Naporano Iron & Metal*,
   79 F. Supp. 2d (D.N.J. 2000) ..............................................................38

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
   571 F.3d 299 (3d Cir. 2009) ................................................................17

*New Jersey Protection & Advocacy, Inc. v. New Jersey Dept. of Educ.*,
   563 F. Supp. 2d 474 (D.N.J. 2008) ................................................... 8

*Payan v. GreenPoint Mortgage Funding, Inc.*,
   681 F.Supp.2d 564 (D.N.J. 2010) .................................................. 30

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ......................................................... 10

*Pinker v. Roche Holdings Ltd.*,
   292 F.3d 361 (3d Cir. 2002) ......................................................... 10

*Piper v. Portnoff Law Assocs., Ltd.*,
   396 F.3d 227 (3d Cir. 2005) ......................................................... 26

*Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*,
   722 F.Supp. 184 (D.N.J. 1989) ..................................................... 39

*Rego Indus., Inc. v. Am. Modern Metals Corp.*,
   91 N.J. Super. 447 (App. Div. 1966) ............................................. 30

*Riemer v. St. Clare's Riverside Med. Ctr.*,
   300 N.J. Super. 101 (App. Div.), *certif. denied*, 125 N.J. 188
   (1997) ........................................................................................ 19

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923) .................................................................... 13

*Ruff v. America's Servicing Co.*,
   No. 07-0489, 2008 U.S. Dist. WL 1830182 (W.D. Pa. Apr. 23,
   2008) ......................................................................................... 35

*Ruffolo v. HSBC Bank USA, N.A.*,
   No. 14-638 (MAS), 2014 WL 4979699 (D.N.J. Oct. 3, 2014) ............. 18

*Sacharow v. Sacharow*,
   177 N.J. 62 (2003) ...................................................................... 22

*Safeco. Ins. Co. of America v. Burr*,
   551 U.S. 47 (2007) ...................................................................... 32

*Saporito v. Combustion Eng'g Inc.*,
   843 F.2d 666 (3d Cir. 1988), *vacated on other grounds*, 489 U.S.
   1049 (1989) ....................................................................................29

*Scott v. Wells Fargo Home Mortg. Inc.*,
   326 F.Supp.2d 709 (E.D.Va. 2003) ...................................................27

*Sedima v. Imrex Co.*,
   473 U.S. 479 (1985)...........................................................................36

*Siwulec v. Chase Home Fin., LLC*,
   2010 WL 5071353 (D.N.J. Dec. 7, 2010)..........................................27

*Somerset Trust Co. v. Stenberg*,
   238 N.J. Super. 279 (Ch. Div. 1989) .................................................20

*Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping
   Group Ltd.*,
   181 F.3d 410 (3d Cir. 1999) ..............................................................28

*St. Clair v. Wertzberger*,
   637 F. Supp. 2d (D.N.J. Jun. 26, 2009) .............................................18

*State v. Redinger*,
   64 N.J. 41 (1973) ...............................................................................22

*Stolba v. Wells Fargo & Co.*,
   2011 WL 3444078 (D.N.J. Aug. 8, 2011) ..........................................27

*Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*,
   716 F.2d 220 (3d Cir. 1983) ..............................................................31

*Tarus v. Pine Hill*,
   189 N.J. 497 (2007) ...........................................................................22

*Turner v. Crawford Square Apts. III. L.P.*,
   449 F.3d 542 (3d Cir. 2006) ..............................................................13

*Turner v. Wong*,
   363 N.J. Super. 186 (App. Div. 2003)................................................41

*Twp. Of Middletown v. Simon*,
   193 N.J. 228 (2008) ...........................................................................23

*Velasquez v. Franz,*
  123 N.J. 498 (1991) ...........................................................................................21

*Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.,*
  210 F. Supp. 2d 552 (D.N.J. 2002) ...................................................................39

*Warden v. McLelland,*
  288 F.3d 105 (3rd Cir. 2002) ............................................................................38

*Watkins v. Resorts Int'l Hotel and Casino, Inc.,*
  124 N.J. 398 (1991) ...........................................................................................21

*Williamson v. Tucker,*
  645 F.2d 404 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396
  (1981) ..................................................................................................................9

*Younger v. Harris,*
  401 U.S. 37 (1971) .............................................................................................16

**Statutes**

12 U.S.C. § 2614 ......................................................................................................24

15 U.S.C. § 1681(b) .................................................................................................33

15 U.S.C. § 1681i(a)(1)(A) ......................................................................................34

15 U.S.C. §1681i(a)(2) .............................................................................................34

15 U.S.C. § 1681s-2(a) .............................................................................................33

15 U.S.C. § 1681s-2(b)(1) ........................................................................................35

15 U.S.C. § 1681s-2(c),(d) .......................................................................................34

15 U.S.C. §1692a(6)(F)(iii) ......................................................................................26

18 U.S.C. § 1961(1) ..................................................................................................37

18 U.S.C. § 1961(5) ..................................................................................................37

18 U.S.C. § 1961(6) ..................................................................................................37

18 U.S.C. § 1962(c) ..................................................................................................36

28 U.S.C. § 1257 .................................................................................................13

N.J.S.A. 2A:14-1 ...............................................................................................27

N.J.S.A. 2C:41-1.a ............................................................................................37

N.J.S.A. 2C:41-1.e ............................................................................................37

N.J.S.A. 2C:41-2.a ............................................................................................36

N.J.S.A. 56:8-2 ..................................................................................................30

**Rules**

Fed. R. Civ. P. 8(a) ..............................................................................................8

Fed. R. Civ. P. 12(b)(1) ........................................................................................8

Fed. R. Civ. P. 12(b)(6) ..............................................................................8, 9, 10

**Other Authorities**

second amendment .............................................................................................42

"Legal Arguments" section ...................................................................................8

Motions to Dismiss, *Am. Compl., pp. 13-16, ¶¶ 1-19* ........................................8

5 Wright & Miller, <u>Federal Practice and Procedure</u> § 1202, 95 (3d ed. 2004) ...............................................................................................................11

## <u>PRELIMINARY STATEMENT</u>

This case is a complete waste of the Court's already limited resources. Plaintiff Lubos Naprstek ("Plaintiff") and Dana Naprstek (collectively, the "Naprsteks") have not made a mortgage payment in over a decade, and final judgment was entered against Plaintiff in the state foreclosure action. After losing several motions to vacate their default, challenge the final judgment in foreclosure and stay the Sheriff Sale, Plaintiff now brings this collateral attack lawsuit against, among others, Ditech Financial LLC, DT Holdings LLC, Green Tree Servicing LLC, Walter Investment Management Co., and Federal National Mortgage Association (Fannie Mae) (collectively, "Defendants"), requesting that this Court overturn the findings and holdings by the state court in the foreclosure action. However, all of Plaintiff's claims are barred by the *Rooker-Feldman* Doctrine, the *Younger* Doctrine, the *Colorado-River* Doctrine, the Entire Controversy Doctrine, *res judicata*, and collateral estoppel. This is the type of case that is being filed far too often – a baseless collateral attack on a completed state foreclosure action. Despite Plaintiff's attempt to amend the complaint to include "Legal Arguments" as to why the various preclusive doctrines purportedly do not apply, the truth of the matter is that the Amended Complaint has changed virtually nothing about the Complaint, and the "Legal Arguments" are unavailing. In fact, in a similar frivolous matter filed by Plaintiff's counsel, Judge Linares recently required the plaintiff to "show case" as to

why the claims were not barred by the proceedings in the state foreclosure action. *See Holder v. Bank of America National Association,* Case No.: 2:18-cv-13095-JLL-JAD (D.N.J. September 17, 2018).

Plaintiff had his day(s) in court in the Foreclosure Action (as hereinafter defined) and filed numerous challenges there - not once did he succeed. Now, after the Superior Court of New Jersey has denied every application, Plaintiff seeks to challenge the foreclosure before this Court, including challenges to the allonges, assignments and mortgage (e.g., *Am. Compl., ¶¶ 19, 23, 24, 26, 29, etc.*), whether Ditech had standing to pursue the Foreclosure Action (e.g., *Am. Compl., ¶¶ 17, 20, 27, 32, etc.*), alleged payments made that were not credited in the final judgment amount (e.g., *Am. Compl., ¶ 46*), and even issues concerning requests for oral argument in the state court case (e.g., *Am. Compl., ¶¶ 66, 67, etc.*). But, Plaintiff's exclusive remedy is an appeal to the New Jersey Appellate Division, not a request that this Court sit in judgment over the State Court. Plaintiff's obviously instituted this action to **continue** to delay the Sheriff's Sale of the property, but this Court should not permit Plaintiff to use and abuse this Court to delay the state court proceeding and ten-year default on the mortgage any longer.

Just as significantly, Plaintiff's Amended Complaint fails to state any claims that could be maintained against any of the Defendants. The Court does not need to expend any more judicial resources on Plaintiff's blatant attempt to collaterally

attack the Foreclosure Action, reassert arguments previously rejected by the state court, and assert factual allegations that do not afford any right to relief under the law.  Defendants respectfully request that this Court dismiss Plaintiff's' Complaint with prejudice.

## STATEMENT OF FACTS

Plaintiff's Complaint is nothing more than a randomly shuffled version of the history of the extensive litigation that has already occurred in the Foreclosure Action.  The within statement of facts will summarize the history of that litigation, and the *Certification of Brian P. Matthews ("Matthews Cert.")* includes the relevant documents from the underlying Foreclosure Action.

### A.    The Underlying Note and Mortgage

On December 21, 2006, Lubos Naprstek and Dana Naprstek entered into a $366,510.00 Note with TBI Mortgage Company (the "Note").  *Compl., Ex. B [ECF No. 1-1, pp. 62-70].*[1]  On that same date Plaintiff entered into a Mortgage with Mortgage Electronic Registration Systems, Inc. as nominee for TBI Mortgage Company to secure the Note (the "Mortgage").  *Compl., Ex. A [ECF No. 1-1, pp. 17-31].*  The Mortgage encumbers Plaintiff's property located at 24 Briar Court,

---

[1] Plaintiff's counsel neglected to attach the Exhibits referenced in the Amended Complaint, however as the Amended Complaint is virtually the same as the Complaint, there is no substantive change.  Accordingly, when referencing relevant Exhibits, this brief will refer to the Complaint, rather than the Amended Complaint.

Hardyston, New Jersey (the "Property"). *Id.* The Mortgage was duly recorded on January 8, 2007, in the office of the Clerk of Sussex County. *Id.*

On February 17, 2009, Mortgage Electronic Registration Systems, Inc. as nominee for TBI Mortgage Company assigned the Mortgage to Countrywide Home Loans Servicing, LP. *Compl., Ex. C [ECF No. 1-1, pp. 127-28].* The Assignment of Mortgage was recorded on April 8, 2009, in the office of the Sussex County Clerk. *Id.* The Mortgage was subsequently assigned on May 11, 2015 by Bank of America N.A., successor by merger to BAC Home Loans Servicing LP, fka Countrywide Home Loans Servicing LP to Green Tree Servicing LLC, which Assignment of Mortgage was recorded on June 8, 2015 in the Sussex County Clerk's Office. *Compl., Ex. C [ECF No. 1-1, p. 126].* Effective August 31, 2015, Ditech Mortgage Corp, and DT Holdings LLC merged with and into Green Tree Servicing LLC, which changed its name to Ditech Financial LLC. *Id.*

**B.    The Naprsteks' Default on the Note and the Foreclosure Action**

    **(i)    The First Foreclosure Action**

In October 2008, the Naprsteks failed to make their monthly loan payments as and when due and their loan went into default. *Id.* In light of the loan default, on February 19, 2009, Countrywide Home Loans Servicing, LP instituted an action to foreclose the Mortgage under Docket number F-9655-09. *Compl., Ex. C [ECF No.*

*1-1, p. 216-23].*  That foreclosure action was dismissed without prejudice for lack of prosecution on September 13, 2013.  *Matthews Cert., Ex. 1.*

### (ii)   Ditech's Second Foreclosure Action and the Naprsteks' Failed Motion to Dismiss

The Naprsteks failed to cure the default and, on March 18, 2016, Ditech Financial LLC ("Ditech") filed a Foreclosure Action in the Superior Court of New Jersey, Chancery Division, Sussex County under Docket Number F-7915-16 (the "Foreclosure Action").  *Compl., Ex. C [ECF No. 1-2, pp. 241-53].*  Defendants (frivolously) moved to dismiss the Foreclosure Action on the grounds that the "statute of limitation for this case expired on October 1st 2014."  *Compl., Ex. C [ECF No. 1-2, pp. 259-62].*  On July 8, 2016, the Chancery Division rejected the Naprsteks' arguments and denied the motion to dismiss.  *Id.*

### (iii)   The Naprsteks' Numerous Motions to Vacate Their Default

On October 21, 2016, default was entered against the Naprsteks in the Foreclosure Action.  *Compl., Ex. C [ECF No. 1-2, p. 278-83].*  On December 5, 2016, the Naprsteks moved to vacate their default and dismiss the Complaint, raising many of the same issues and arguments that are now presented to this Court.  *Id.*  Ditech opposed the motion.  *Id.*  On January 6, 2017, the Chancery Division denied the Naprsteks' Motion.  *Id.*

That same day, the Naprsteks ***again*** moved to vacate their default and dismiss the Foreclosure Action.  *Matthews Cert., Ex. 2.*  Ditech again opposed the meritless

application.  *Matthews Cert., Ex. 3*. On April 11, 2017, the Chancery Division again

denied the Naprsteks' Motion.  *Matthews Cert., Ex. 3*.

### (iv)    Entry of Final Judgment

On August 8, 2017, Ditech moved for entry of Final Judgment of Foreclosure

against the Naprsteks.  *Matthews Cert., Ex. 4*.  In response, the Naprsteks cross-

moved to compel Ditech to "show the original promissory note."  *Matthews Cert.,*

*Ex. 5*.  Ditech opposed the cross-motion, arguing that the Naprsteks never contacted

Ditech's counsel to schedule a time to view the Note.  *Matthews Cert., Ex. 6*.  On

October 20, 2017, the Court denied the Naprstek's cross-motion and, on October 27,

2017, Final Judgment was entered by The Honorable Philip J. Maenza, J.S.C.

*Matthews Cert., Ex. 7*.

### (v)    The Naprsteks' Post-Judgment Motions and the Within Action

On November 7, 2017, the Naprsteks' (at this time represented by Joshua L.

Thomas, Esq.) moved to vacate the Final Judgment of Foreclosure.  *Matthews Cert.,*

*Ex. 8*.  Many of the arguments raised in that motion to vacate are the same arguments

raised before this Court (e.g., there are various issues with the allonges to the note,

standing and the assignment of mortgage).  *Id.*  Ditech opposed the frivolous motion

and rebutted each of the facetious arguments raised by the Naprsteks and their

counsel.  *Matthews Cert., Ex. 9*.  That motion was denied by the Chancery Division

on March 5, 2018.  *Matthews Cert., Ex. 10*.  In its decision, the Chancery Division

noted, "Defendant has simply not provided any basis for the court to vacate the final judgment under any of the six categories enunciated under R. 4:50-1, or in the interest of justice. The Defendants have resided in the property since 2006, and since October 2008, they have failed to make their mortgage payments pursuant to the loan terms they agreed upon." *Id.*

On July 6, 2018, Plaintiff filed the within action. *[ECF No. 1].* The Complaint includes almost 700 pages of exhibits, including the majority of the documents filed in the Foreclosure Action. Even without reading the Complaint, this **alone** should be sufficient for this Court to recognize that the within action is nothing more than an improper attempt to attack the rulings of the Chancery Division in the Foreclosure Action and further delay Sheriff's Sale of the Property.

Not satisfied with the Chancery Division's well-reasoned decision on the motion to vacate final judgment, on August 6, 2018, the Naprsteks filed a Motion to Stay Sheriff's Sale of the Property. *Matthews Cert., Ex. 11.* That application was likewise denied again. *Id.*

On September 21, 2018, Defendants, along with co-defendants Safeguard Property and, TBI Mortgage Inc. and Toll Brothers, moved to Dismiss Plaintiff's Complaint. *[ECF Nos. 18, 19, 20].* Plaintiff did not oppose the Motions, but rather filed an Amended Complaint ("*Am. Compl.*") out of time. *[ECF No. 23].* The Amended Complaint by-and-large does not modify the Complaint, other than adding

a "Legal Arguments" section to attempt to respond to the arguments raised in the Motions to Dismiss, *Am. Compl., pp. 13-16, ¶¶ 1-19*, and adding two new claims, one for "Intentional Infliction of Emotional Distress" against Safeguard Property and the second for Respondeat Superior, against all defendants. *Am. Compl., pp. 35-38.* By stipulation, Defendants agreed to accept the late-filed Amended Complaint and Plaintiff agreed to extend time to respond to the Amended Complaint. *[ECF No. 25].*

Defendants now move to dismiss the Amended Complaint in its entirety.

## LEGAL ARGUMENT

### I.   STANDARDS OF REVIEW ON A MOTION TO DISMISS

The Federal Rules provide that a party may file a Motion to Dismiss a claim for "lack of subject matter jurisdiction" or for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), 12(b)(6), 8(a). Plaintiff's Complaint is wholly void of any factual or legal basis which would entitle Plaintiff to relief under any of these theories. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).

### A.   This Court Lacks Subject Matter Jurisdiction Under Fed. R. Civ. P. 12(b)(1)

A defendant may move to dismiss a claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) at any time. *New Jersey Protection &*

*Advocacy, Inc. v. New Jersey Dept. of Educ.*, 563 F. Supp. 2d 474, 479 (D.N.J. 2008) (citations omitted). "For a Rule 12(b)(1) motion addressing the existence of subject matter jurisdiction, however, no presumptive truthfulness attaches to the allegations of a plaintiff." *Cohen v. Kurtzman*, 45 F. Supp. 2d 423 (D.N.J. 1999) (citations omitted). A court is not limited to the allegations contained in the Complaint, and may consider "[c]onflicting written and oral evidence . . . and a court may 'decide for itself the factual issues which determine jurisdiction.'" *Id.* (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396 (1981)). Unlike a Motion under Fed. R. Civ. P. 12(b)(6), "when subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Id.* (citations omitted). A party who seeks to invoke federal jurisdiction bears the burden of proving standing. *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 266 (3d Cir. 2001). In this case, Plaintiff has not and cannot meet that burden. All of Plaintiff's claims relate to events in the Foreclosure Action, which was completed through to final judgment by the state court. Therefore, this Court does not have subject matter jurisdiction, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### B.   The Complaint Fails to State A Claim Upon Which Relief May Be Granted Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state

a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In deciding Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6), the Court must "accept all factual allegations as true, construe the

complaint in the light most favorable to the plaintiff[s], and determine whether,

under any reasonable reading of the complaint, the plaintiff[s] may be entitled to

relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting

*Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Thus, "to

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A complaint must contain more than "labels and conclusions," and the factual

allegations "must be enough to raise a right to relief above the speculative level."

*See Twombly*, 550 U.S. 544 (2007).  "Without some factual allegation in the

complaint, it is hard to see how a claimant could satisfy the requirement of providing

not only 'fair notice' of the nature of the claim, but also 'grounds' on which the

claim rests." *Id*. at 1965 n.3.  "'The pleading must contain something more [than] a

statement of facts that merely creates a suspicion [of] a legally cognizable right of

action.'"  Moreover, "Rule 8(a) 'contemplate[s] the statement of circumstances,

occurrences, and events in support of the claim presented' and does not authorize a

pleader's 'bare averment that he wants relief and is entitled to it.'" *Id.* (quoting 5 Wright & Miller, <u>Federal Practice and Procedure</u> §1202, pp. 94, 95 (3d ed. 2004)).

The Supreme Court has directed that a court should engage in a two-pronged analysis in determining whether a claim has facial plausibility. *See Iqbal*, 556 U.S. at 678. First, the court must determine which allegations are to receive a presumption of truth – bearing in mind that mere legal conclusions are not to be presumed true. *Id.* Second, the Court must determine whether the well-pleaded facts, when presumed to be true, constitute "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680 (finding that, because there existed lawful reasons for the challenged policy, the plaintiff failed to allege sufficient facts to "'nudg[e] his claim of purposeful discrimination across the line from conceivable to plausible'"). In undertaking this inquiry, a Court should be mindful that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 664.

Here, the Plaintiff's Amended Complaint is rife with the "blanket assertions of entitlement to relief" – exactly what the *Twombly* standard guards against. When a party's allegations, "however true, could not raise a claim of entitlement to relief," then "this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558.

Accordingly, Plaintiff's Amended Complaint fails to satisfy Rule 12(b)(6) and Rule 8(a) and must be dismissed.

## II. PLAINTIFF'S AMENDED COMPLAINT IS BARRED BY THE ENTRY OF FINAL JUDGMENT IN THE STATE COURT FORECLOSURE ACTION

The state court entered final judgment in the Foreclosure Action, and the Naprsteks filed numerous Motions to Dismiss the Foreclosure Action and to vacate the final judgment, all of which were rejected by the Chancery Division. That should end this Court's inquiry into all of Plaintiff's claims. All of Plaintiff's claims are based on the faulty premise that there is some unspecified issue with Ditech's standing to foreclose in the Foreclosure Action. However, Ditech's standing was already decided as part of the Foreclosure Action. *Matthews Cert., Ex. 7.*

In order to establish its *prima facie* right to foreclose, a plaintiff has to establish that: "(1) the mortgage and loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default." *Bank of Am., N.A. v. Westheimer*, No. 12-7080 (JAP), 2014 BL 55500, at *11 (D.N.J. Feb. 28, 2014) (citing *Great Falls Bank v. Pardo*, 263 N.J. Super. 388, 394 (Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542, 545 (App. Div. 1994) ("The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the

indebtedness, and the right of the mortgagee to resort to the mortgaged premises")).

The Ditech's *prima facie* right to foreclose was established in the Foreclosure

Action.   The entry of final judgment in the foreclosure prevents Plaintiff from

bringing his redundant and rejected claims here.

### A.   The Rooker-Feldman Doctrine Deprives This Court Of Subject Matter Jurisdiction

The Rooker-Feldman Doctrine stands for the proposition that federal courts

lack subject matter jurisdiction to review and reverse judgments rendered by state

courts.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia

Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *see also* 28 U.S.C. § 1257

(conferring certiorari power solely upon the United States Supreme Court).  In other

words, "the *Rooker-Feldman* doctrine divests a lower federal court of subject matter

jurisdiction of an action if the relief requested would effectively reverse a state court

decision or void its ruling."  *In re Sabertooth*, 443 B.R. 671, 679 (Bankr. E.D. Pa.

2011); *see, e.g., Turner v. Crawford Square Apts. III. L.P.,* 449 F.3d 542, 547 (3d

Cir. 2006); *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005).

In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159

(3d Cir. 2010), the Court of Appeals "[broke] down the holding of Exxon Mobil,

[and] conclude[d] that there are four requirements that must be met for the *Rooker-

Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff

complains of injuries caused by the state court judgments; (3) those judgments were

- 13 -

rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great Western Mining,* 615 F.3d at 166 (internal quotations and alterations omitted). When these requirements are met, the district court lacks subject matter jurisdiction over the complaint. *Id.*

In this action, the *Great Western Mining* requirements have all been met. It is indisputable that: (1) Plaintiff lost in state court and a final foreclosure judgment was entered against him; (2) Plaintiff complains of injuries caused by that state court judgment, with the crux of the Complaint being that final judgment in the Foreclosure Action was improper because of various alleged issues with the Note and Mortgage, standing, etc.; (3) Plaintiff asks this Court to review the state court's decision by holding that foreclosure was improper; and (4) the state court judgment was first entered well before Plaintiff commenced this action. Finally, Plaintiff's only option for a review of the Foreclosure Action is an appeal in the state court, not a collateral action here.

Courts in this Circuit have consistently found *Rooker-Feldman* to be applicable and a bar to plaintiff's relief in a federal district court in the context of state foreclosure actions. *See, e.g., Madera v. Ameriquest Mortgage Co.*, 586 F.3d 228, 232 (3d Cir. 2009) (holding that plaintiff's attempt to utilize adversary federal proceeding to re-adjudicate state court foreclosure proceedings stripped the court of subject matter jurisdiction); *see, e.g., In re Rusch,* 2010 WL 5394789 (Bankr. D.N.J.

2010) ("A federal district court 'cannot directly or indirectly review, negate, void, or provide relief that would invalidate a decision in a State Foreclosure Action.'") (citing *Kushner v. Wachovia Bank, N.A.*, 2010 WL 5094511 (D.N.J. 2010)); *Klein v. U.S. Bank*, 2010 WL 5018881 (M.D. Pa. 2011); *Hansford v. Bank of America*, 2008 WL 4078460, *5 (E.D. Pa. 2008). *Rooker-Feldman* explicitly guards against allowance any of the relief sought by Plaintiff.

This is exactly what Plaintiff is doing in this matter, this complaint was filed with the sole objective of staying a Sheriff's Sale of the property and delaying the inevitable and further, is blatantly frivolous. *See Matthews Cert., Ex. 11*. In fact, this delay tactic is highlighted by Plaintiff's late-filed Amended Complaint, which did nothing to cure the pleading deficiencies of the Complaint. Simply put, this Court does not have jurisdiction to stay the Sheriff's Sale and review the findings in the foreclosure action. Accordingly, this Court must dismiss the Complaint pursuant to the *Rooker-Feldman* Doctrine because this Court cannot conduct an appellate-like review over the state court ruling.

## B.    Plaintiff's Claims Are Barred by the Younger Doctrine

A federal court "must abstain" from exercising jurisdiction when "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Lazaridis v. Wehmer*, 591 F.3d 666, 670

(3rd Cir. 2010); *see also Younger v. Harris*, 401 U.S. 37 (1971). The issues in the matter before the Court are wholly tied to a state court foreclosure proceeding.

The law is clear that where claims asserted in this case were already litigated in the pending foreclosure proceeding, *Younger* abstention prevents re-litigation in this separate action. *Downey v. Perrault*, No. 09-1018, 2009 WL 3030051 (D.N.J. Sep. 15, 2009) (applying *Younger* abstention doctrine to state court mortgage foreclosure proceedings).

In the instant matter, all of the *Younger* elements are satisfied: (1) foreclosures in New Jersey are judicial in nature and the Foreclosure Action is pending the Sheriff's Sale of the Property, (2) there is a state interest in the proceedings as they implicate real property and state court laws govern the foreclosure process; and (3) Plaintiff had an adequate opportunity to raise these claims in state court – and did. The law is clear that where claims asserted were already litigated in a pending foreclosure proceeding, *Younger* abstention applies to prevent re-litigation in this separate action. *Downey v. Perrault*, *supra*, 2009 WL 3030051 (applying *Younger* abstention doctrine to state court mortgage foreclosure proceedings). Accordingly, the Amended Complaint should be dismissed.

## C. The Colorado River Abstention Doctrine Applies to Bar Plaintiff's Claims

The Court must also abstain from hearing Plaintiff's case under the *Colorado River* Abstention Doctrine. A federal court may abstain and defer to state court

proceedings for reasons of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813, 817 (1976). The threshold issue for *Colorado River* abstention is whether the two actions are "parallel", meaning the state and federal proceedings involve the same parties and "substantially identical claims [raising] nearly identical allegations and issues." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307 (3d Cir. 2009). If the proceedings are parallel, then the court must assess six factors to determine whether abstention is appropriate: "(1) which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id.* at 308.

Here, the Foreclosure Action and this action are parallel proceedings. Both cases involve the same loan and issues. Plaintiff's Amended Complaint purports to challenge the validity of Defendants' actions leading up to final judgment in the Foreclosure Action. A judgment in favor of Plaintiff here would be contradictory to the state court's ruling that the loan was properly foreclosed, and would "throw into turmoil the parties' rights and obligations over [the Property] and mortgage, as well

as the comity between courts." *St. Clair v. Wertzberger*, 637 F. Supp. 2d, 251, 255 (D.N.J. Jun. 26, 2009).

Furthermore, the six factors weigh in favor of abstention. The state court was the first to obtain jurisdiction over the matter and the Property (in New Jersey) and had been overseeing the foreclosure since 2016. In addition, the action "implicate[d] [an] important state interest—foreclosure of a property in New Jersey." *DiPietro v. Landis Title Co.*, No. 11-5110, 2012 WL 2116404, at *4 (D.N.J. June 11, 2012). Granting the relief that Plaintiff's request "would cause havoc with the rulings of the state court" and "would directly impact New Jersey's interest in protecting the authority of its judicial system." *Ruffolo v. HSBC Bank USA, N.A.*, No. 14-638 (MAS), 2014 WL 4979699, at *4 (D.N.J. Oct. 3, 2014). Plaintiff could have raised all these same claims in the Foreclosure Action and there is no reason to believe that the state court was an inadequate forum for reviewing any of their claims (indeed it is the superior forum). In light of the above, the *Colorado River* Abstention Doctrine directs the Court to abstain.

### D.     Plaintiff's Complaint Is Barred by the Entire Controversy Doctrine

Plaintiff's claims involve allegations related to the origination of the Mortgage, the servicing of the Mortgage, and Ditech's standing to foreclose the Mortgage. In essence, Plaintiff is claiming that Ditech did not have standing to foreclose the Mortgage and Plaintiff should be rewarded with a free house. *Id.*

- 18 -

Beyond this claim having no merit, it is also barred by the Entire Controversy Doctrine.

The Entire Controversy Doctrine requires the joinder in one action of all claims and all parties related to a single underlying transaction. *See Manhattan Woods Golf Club, Inc. v. Arai*, 312 N.J. Super. 573, 577 (App. Div. 1998) (citations omitted); *Riemer v. St. Clare's Riverside Med. Ctr.*, 300 N.J. Super. 101 (App. Div.), *certif. denied*, 125 N.J. 188 (1997). The threefold objectives behind the Entire Controversy Doctrine are to: (1) encourage comprehensive and conclusive determination of a legal controversy; (2) achieve party fairness, including for both parties before the court, as well as prospective parties; and (3) promote judicial economy and efficiency by avoiding fragmented, multiple, and duplicative litigation. *Riemer*, 300 N.J. Super. at 108-09 (citations omitted).

The Entire Controversy Doctrine is also intended to "conserve judicial resources" because "judicial energy is not inexhaustible or endlessly renewable." *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 24 (1989) (observing that the Entire Controversy Doctrine controls "litigational extravagance"). It requires joinder of all legal and equitable claims relating to a single underlying transaction in a single action, not piecemeal litigation. *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83 (App. Div. 1997); *see also DiTrolio v. Antiles*, 142 N.J. 253, 267-68 (1995) ("It is the core set of facts that provides the link between distinct claims

against the same or different parties and triggers the requirement that they be determined in one proceeding."). "[T]he entire controversy doctrine applies not only to matters **actually** litigated, but to all aspects of a controversy that **might have thus been litigated** and determined." *Mori v. Hartz Mountain Dev. Corp.*, 193 N.J. Super. 47, 56 (App. Div. 1983) (emphasis in original).

The Entire Controversy Doctrine mandates that Plaintiff's claims regarding the mortgage loan and the right to foreclose were required to be adjudicated in the Foreclosure Action. *Napoli v. HSBC Mortg. Servs., Inc.*, No. 12-CV-222 (RMB-AMD), 2012 BL 218846, at *3 (D.N.J. Aug. 27, 2012) (upholding Entire Controversy Doctrine, and holding that borrowers must raise foreclosure claims in chancery action). The Entire Controversy Doctrine extends to claims that are germane to the Foreclosure Action. *See In re Mullarkey*, 536 F.3d 215, 299 (3d Cir. 2008). Germane claims are defined as those claims "arising out of the mortgage transaction which is the subject of the foreclosure action." *Leisure Tech. v. Klingbeil Holdings Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975). As noted earlier, there are only three elements that must be shown in order to establish the right to foreclose: the validity of the loan documents (the note and mortgage); the alleged default; and the right to foreclose. *Pardo*, 263 N.J. Super. at 394; *Somerset Trust Co. v. Stenberg*, 238 N.J. Super. 279, 283-84 (Ch. Div. 1989). The validity of the default is one of the three elements needed to prove a foreclosure.

This Amended Complaint is nothing more than a belated attempt by Plaintiff to circumvent the final judgment of the state court in the Foreclosure Action through a collateral attack.  All of the claims that Plaintiff is seeking to bring here were related to the loan at issue in the Foreclosure Action and were clearly germane to the Foreclosure Action.  This is exactly the type of chicanery that the Entire Controversy Doctrine is designed to prevent.  Plaintiff had a full and fair opportunity to raise any issues they had related to the enforceability of the loan in the Foreclosure Action, and were required to do so at that time.

### E.    Plaintiff's Claims Are Barred by Res Judicata and Collateral Estoppel

Plaintiff's Amended Complaint is also barred by *res judicata* and collateral estoppel because his claims regarding the right to foreclose and the propriety of the default.  Plaintiff raised his claims and defenses in the foreclosure action and sought to vacate the judgment and the default – the Chancery Division rejected these arguments.  "The term '*res judicata*' refers broadly to the common-law doctrine barring re-litigation of claims or issues that have already been adjudicated." *Velasquez v. Franz*, 123 N.J. 498, 505 (1991); *see also Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 124 N.J. 398, 409 (1991) ("In essence, the doctrine of *res judicata* provides that a cause of action between parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be re-litigated by those parties or their privies in a new proceedings."); *In re Estate of Gabrellian*, 372 N.J. Super. 432,

446 (App. Div. 2004) ("*Res judicata* . . . has the salutary purpose of preventing re-litigation of the same controversy between the same parties."). Federal courts must apply the doctrine of *res judicata*, and "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. Of Ed.*, 465 U.S. 75, 81 (1984).

Similarly, "collateral estoppel" is a preclusive doctrine that bars litigation of facts fully litigated and actually determined in a prior action involving a different claim or cause of action. *See Tarus v. Pine Hill*, 189 N.J. 497, 520 (2007) ("Collateral estoppel, in particular, represents the "branch of the broader law of *res judicata* which bars re-litigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.") (quoting *Sacharow v. Sacharow*, 177 N.J. 62, 76 (2003)). If an issue of ultimate fact has once been determined by a valid judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *See State v. Redinger*, 64 N.J. 41, 45 (1973). "To foreclose re-litigation of an issue based on collateral estoppel, the party asserting the bar must show that (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a judgment on the merits; (4) the determination of the issue was essential to the prior

judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding." *Twp. Of Middletown v. Simon*, 193 N.J. 228, 236 (2008).

In the instant matter, the propriety of the Foreclosure Action including the Plaintiff's' loan default and whether Ditech was entitled to foreclose was already conclusively addressed when final judgment was obtained in the Foreclosure Action. Therefore, because these issues have already been conclusively resolved in the Foreclosure Action, they should not be re-adjudicated.

## III.   PLAINTIFF FAILS TO STATE A VIABLE CLAIM FOR RELIEF AGAINST DEFENDANTS

Even if Plaintiff's claims were not barred, which they are, Plaintiff has failed to meet the well-established pleading standards for all of the claims in the Amended Complaint.

### A.   Plaintiff Has No Claim Under the Real Estate Settlement Procedures Act

In the First Count of the Amended Complaint, Plaintiff alleges that Defendants violated the Real Estate Settlement Procedures Act ("RESPA") in the origination of the loan, and "several violations" occurred during the Foreclosure Action.  *Am. Compl., Count 1 ¶ 5*.  Notwithstanding that Plaintiff has not even *remotely* identified how Defendants may have violated RESPA, despite having the benefit of reviewing Defendants' first motion to dismiss and having the opportunity

- 23 -

to amend the Complaint; under RESPA, Plaintiff has no claim for relief.  Plaintiff

seeks unspecified damages, because Defendants allegedly moved forward with the

Foreclosure Action without reviewing their loan modification application.

However, Plaintiff has not alleged any conduct that violated RESPA.

### (i) Plaintiff has Not Identified Any Damages From a Purported RESPA Violation

Additionally, Plaintiff fails to allege any actual damages.  Accordingly,

Plaintiff's RESPA claims must be dismissed as a matter of law.  To state a claim

under § 2605 of RESPA, breach alone is not enough – Plaintiff must, at minimum,

also allege that the breach resulted in actual damages." *Hutchinson v. Delaware Sav.*

*Bank, FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).  Moreover, Plaintiff must allege

a causal link between the purported specific damages at issue and the alleged RESPA

violation.  *Hawk v. Carrington Mortg. Servs., LLC*, NO. 3:14-1044, 2016 BL

203621, at *4 (M.D. Pa. June 23, 2016) (citing *McLean v. GMAC Mortg. Corp.*, 398

F. App'x 467, 471 (11th Cir. 2010)).

Here, Plaintiff has not pled the elements of any viable RESPA claim and his

RESPA cause of action should be dismissed.

### (ii) Plaintiff's RESPA Claims Are Likely Barred by the Statute of Limitations

The statute of limitations for bringing a claim for damages under RESPA also

bars Plaintiff's cause of action.  12 U.S.C. § 2614.  Because Plaintiff's allegations

are so vague, it is impossible to determine whether Plaintiff are alleging actions that are covered by the one-year or three-year statute of limitations.[2]  However, it appears that Plaintiff are complaining about events surrounding the origination of the loan in 2008.  Regardless of which time period applies, Plaintiff's RESPA claims are time-barred.  Plaintiff did not assert a RESPA claim until July 2018 when they filed the instant Complaint, well after both the one-year and three-year statute of limitation expired for conduct that occurred in 2008.

Accordingly, even if Plaintiff could plausibly state a RESPA claim in this matter, it would be barred by statute of limitation, thus mandating dismissal of the RESPA allegations with prejudice.

### B.    Plaintiff's FDCPA Claim Fails

In the first and fifth counts of Plaintiff's Amended Complaint, Plaintiff alleges that Defendants somehow violated the Fair Debt Collection Practices Act ("FDCPA") because Defendants do not "have evidence of being a credit for the 'mortgage loan' in dispute."  *Am. Compl. Count 5, ¶ 2.*  Notwithstanding the fact that this argument was expressly rejected by the numerous holdings in the Foreclosure Action, Plaintiff has not established a claim under the FDCPA.  Even if Plaintiff's Amended Complaint is read to glean even the minutest cause of action—

---

[2] As noted above, the lack of specificity alone warrants dismissal.

Defendants are not debt collectors and are therefore exempt from the FDCPA.  As such, the FDCPA claim must be dismissed with prejudice.

### (i)    Plaintiff has Failed to State a Claim under the FDCPA

To prevail on an FDCPA claim, a plaintiff must prove that (1) he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a "debt" as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect a debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir 2014) (citing *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 232 (3d Cir. 2005)).  Here, even when Plaintiff is given every reasonable inference, the Amended Complaint fails to state a claim as the Plaintiff has not identified any improper debt collection communication.

### (ii)    Defendants are Exempt from the FDCPA because they are Collecting Their Own Debt

Fannie Mae owns the loan.  Ditech serviced the Loan.  Such entities are exempt from the FDCPA.

The FDCPA specifically excludes "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person" from the definition of "debt collector."  15 U.S.C. §1692a(6)(F)(iii).  Accordingly, because Fannie Mae is collecting its own debt, even if Plaintiff **had**

- 26 -

identified **any** communications that ***may have*** violated the FDCPA—they have not—these claims would not apply to Fannie Mae.

Similarly, the FDCPA does not apply to mortgage servicing companies.  See *Stolba v. Wells Fargo & Co.*, 2011 WL 3444078 *2 (D.N.J. Aug. 8, 2011) (citing *Siwulec v. Chase Home Fin., LLC*, 2010 WL 5071353 *3 (D.N.J. Dec. 7, 2010); *Dawson v. Dovenmuehle Mortg., Inc.*, 2002 WL 501499 *5 (E.D.Pa. Apr. 3, 2002)); *Scott v. Wells Fargo Home Mortg. Inc.*, 326 F.Supp.2d 709, 718 (E.D.Va. 2003); *James v. Wells Fargo Bank, N.A.*, 2011 WL 1874707, at *3 (D.Utah May 17, 2011)) (further citation omitted). As such, Ditech (and related entities) are not "debt collectors" and Plaintiff cannot maintain a FDCPA claim against them.

### C.     Plaintiff Fails To State a Claim for Common Law Fraud

In the first and fourth counts of the Amended Complaint, Plaintiff asserts a common law fraud claim that "the loan was never consummated properly."  *Am. Compl., Count 4, ¶ 13.*  Plaintiff's fraud claim cannot succeed because: (1) Plaintiff's fraud claim is time-barred; (2) Plaintiff has not pled the necessary elements; and (3) the claim is not pled with the particularity required by the Court Rules.

### (i)     Plaintiff's Fraud Claim is Barred by the Statute of Limitations

The statute of limitations for fraud claims is six years.  N.J.S.A. 2A:14-1.  The statute of limitation accrues on the date of the act or omission that gives rise to the fraud claim, or the date on which the act or omission reasonably should have been

discovered. *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.,* 181 F.3d 410, 413 (3d Cir. 1999).

The closing on the Plaintiff's loan took place in 2008. Plaintiff filed their claim in July 2018 – over four years beyond the expiration of the six year statute of limitations.

### (ii)    Plaintiff's Fraud Claim is Inadequately Pleaded

Additionally, Plaintiff has not met the pleading requirements for a fraud claim against Defendants. In order to state a claim for fraud, Plaintiff must allege – as to Defendants: "(1) a material misrepresentation of presently existing or past fact; (2) knowledge or belief by the Defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

Here, Plaintiff has not pled a claim of fraud against Defendants. Plaintiff has not identified anyone who made an alleged misrepresentation, or the content of the alleged misrepresentation. Plaintiff does not allege that any statement was made by Defendants, knowing that the statement was false. Plaintiff does not allege that their reliance was intended, or that their reliance was reasonable. Likewise, Plaintiff is unable to demonstrate that he suffered any damages from Defendants' actions.

Without these necessary elements, Plaintiff's common-law fraud claims fails and must be dismissed.

Furthermore, Fed. R. Civ. P. 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Therefore, the basic tenets of fraud pleading require plaintiffs to state the "who," "what," "when," and "where" details of the alleged fraud. *Saporito v. Combustion Eng'g Inc.*, 843 F.2d 666, 675 (3d Cir. 1988), *vacated on other grounds*, 489 U.S. 1049 (1989).

Plaintiff cannot sustain any of the elements necessary for a viable common law fraud claim. Accordingly, Plaintiff's fraud claim is procedurally and substantively defective and must be dismissed with prejudice.

### D.     Plaintiff's Claims Under the CFA Fail

In the second count of Plaintiff's Amended Complaint, Plaintiff alleges that Defendants violated the New Jersey Consumer Fraud Act ("CFA") because the foreclosure is allegedly invalid. There is not one shred of evidence in the record that supports Plaintiff's CFA claim against Defendants. In order to state a valid claim for a violation under the CFA, a plaintiff must allege: "(1) unlawful conduct by the defendant; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Daubs v. Mercedes-Benz USA, LLC,* 378 N.J. Super. 105, 114 (App. Div. 2005).

Like all claims of fraud, claims under the CFA are subject to a heightened pleading standard pursuant to Fed. R. Civ. P. 9(b) and must be pled with specificity. *Payan v. GreenPoint Mortgage Funding, Inc.*, 681 F.Supp.2d 564, 573 (D.N.J. 2010) (granting judgment for movant where mortgagees failed to "identify any particular facts in support of their CFA claim nor do they plead the elements of a CFA claim"). Thus, bald assertions and conclusory statements that certain conduct is a "violation" of the CFA are insufficient to allege a cause of action. *See Gruccio v. Baxter*, 135 N.J. Super. 290, 294 (Law Div. 1975) ("Liberal as our practice is, it does not justify the pleading of mere conclusions without facts . . . ."); *Rego Indus., Inc. v. Am. Modern Metals Corp.*, 91 N.J. Super. 447, 456 (App. Div. 1966).

The plain language of the statute requires that, in order to state a claim for violation of the CFA, a plaintiff must allege misrepresentations or omissions "in connection with the sale or advertisement of any merchandise or real estate." N.J.S.A. 56:8-2. "To satisfy this requirement, '[t]he misrepresentation has to be one which is material to the transaction . . . made to induce the buyer to make the purchase.'" *Castro v. NYT Television*, 370 N.J. Super. 282, 294 (App. Div. 2004) (quoting *Gennari v. Weichert Co. Realtors,* 148 N.J. 582, 607 (1997)). Bald assertions that certain conduct is a "violation" of the CFA are simply insufficient to allege a cause of action. *See Gruccio v. Baxter*, 135 N.J. Super. 290, 294 (Law Div. 1975).

The unlawful conduct that Plaintiff alleges as the basis for her CFA claim are conclusory claims that Defendants improperly proceeded in the Foreclosure action. Plaintiff provides no factual specificity. More importantly, as was addressed above, neither of these claims have any merit and they fail as a matter of law. This issue was decided against Plaintiff in the Foreclosure Action.

### E.    Plaintiff's "Unjust Enrichment" Claim Fails

In the third count of the Amended Complaint, Plaintiff alleges, without support, that Defendants have somehow been unjustly enriched. In New Jersey, an unjust enrichment claim requires a plaintiff to allege that: (1) at plaintiff's expense, (2) defendant received a benefit (3) under circumstances that would make it unjust for Defendant to retain the benefit without paying for it. *In re K-Dur Antitrust Litig.*, 338 F.Supp.2d 517, 544 (D.N.J. 2004). It is well settled that where an express contract governs the relationship of the parties, unjust enrichment is not an available means of recovery. *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983). Further, if "[t]he parties are bound by their agreement, [then] there is no ground for implying a promise as long as a valid unrescinded contract governs the rights of the parties." *Id.* at 227. Therefore, "recovery based on a quasi-contract theory is mutually exclusive of a recovery based on a contract theory." *Caputo v. Nice-Pak Prods., Inc.*, 300 N.J. Super. 498 (App. Div. 1997); *Baker v. Inter Nat. Bank*, 2012 WL 174956 at *10 (D.N.J. Jan. 19, 2012)

(holding that since an express contract governed the relationship of the parties, there was no basis for an unjust enrichment claim); *Horizon Blue Cross Blue Shield of New Jersey v. Medco Health Solutions*, 2007 WL 1238361, at *14 (Law Div. Apr. 16, 2007) ("[i]t should be painfully obvious that [Plaintiff] cannot succeed on an unjust enrichment theory or other equitable basis.  The 1998 Agreement stands as the express impediment to a quasi-contractual remedy.").

The relationship between Plaintiff and Defendants is governed by the loan contracts at issue.  Therefore, because express contracts govern the relationship between the parties, there is no basis for an unjust enrichment claim.  Moreover, it is impossible to see any manner in which Defendants could be unjustly enriched when Plaintiff defaulted on the loan almost ten years ago.

## F.    Plaintiff Fails to State a Claim for Violation of the FCRA

Plaintiff's Amended Complaint merely states that Defendants violated the Fair Credit Reporting Act (the "FCRA").  Though there are no facts whatsoever, Plaintiff seems to contend that his credit was somehow negatively impacted by Defendants simply because he has mentioned the FCRA.  Nevertheless, Plaintiff has failed to state a viable claim for any violation of the FCRA.

The FCRA was enacted by Congress primarily to protect consumers.  *See Gelman v. State Farm Mut. Auto Ins. Co.*, 583 F.3d 187, 191 (3d Cir. 2009) (citing *Safeco. Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007) ("Congress enacted [the]

- 32 -

FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.")).  Its stated purpose is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.").  15 U.S.C. § 1681(b).

The FCRA places duties on two types of entities: credit rating agencies and "furnishers of information."  The latter category generally refers to "any entity that reports information relevant to a consumer's credit rating — *i.e.*, payment history, amount of debt, and credit limit — to credit reporting agencies."  *Burrell v, DFS Servs., LLC*, 753 F. Supp. 2d 438, 446 (D.N.J. 2010).  Here, giving the Amended Complaint the most liberal reading, the only logical possibility is that the claim is directed against Defendants as a "furnisher of information."

### (i)   Plaintiff Cannot Enforce the Furnisher's Obligation to Provide "Accurate Information"

To the extent Plaintiff could be making a claim about "accuracy," no private right of action exists against Ditech.  15 U.S.C. § 1681s-2(a) requires that entities which furnish data to consumer reporting agencies provide accurate information.  There is no private right of action for consumers to enforce this duty against furnishers of information.  *See Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d

Cir. 2011) (affirming dismissal of 15 U.S.C. §1681s-2(a) claim because no private right of action exists under that provision); *Burrell v. DFS Servs., LLC*, 753 F. Supp. 2d 438, 445 (D.N.J. 2010) (noting that Congress did not create a private cause of action to enforce § 1681s-2(a) and instead, through § 1681s-2(d), required the obligations therein to be enforced exclusively by the government entities identified in other portions of the FCRA); *see also* 15 U.S.C. § 1681s-2(c),(d).

Thus, to the extent Plaintiff could possibly base her claims on the furnishing of inaccurate information about any account, the claims fail as a matter of law. Plaintiff cannot enforce Ditech's obligation to provide accurate information pursuant to 15 U.S.C. § 1681s-2(a), because no private right of action exists.  *See Huertas*, 641 F.3d at 34.  Accordingly, the Amended Complaint should be dismissed with prejudice.

### (ii)   Plaintiff Fails to State a Claim for "Failure to Investigate"

The FCRA provides the only mechanism for resolution of a credit reporting dispute.  If a consumer disputes the accuracy of information provided by a data furnisher, the consumer may notify the credit reporting agency of his dispute.  The credit reporting agency is then required to conduct a reasonable reinvestigation.  *See* 15 U.S.C. § 1681i(a)(1)(A).  Upon receipt of such a dispute, the credit reporting agency has five days to notify "any person who provided any item of information in dispute." 15 U.S.C. §1681i(a)(2).  This notification "triggers a second duty imposed

upon data furnishers: after receiving notice from the credit reporting agency, the furnisher must conduct its own investigation, and report back to the agency on the accuracy of the disputed information." *Henderson v. Equable Ascent Fin. LLC*, No. 11-cv-3576 (SRC), 2011 WL 5429631, at *5 (D.N.J. Nov. 4, 2011) (citing 15 U.S.C. § 1681s-2(b)(1)).

Importantly, §1681s-2(b) does not provide relief for consumers who lodge their dispute directly with a furnisher of information. *See Burrell*, 753 F.Supp.2d at 448. District Courts in the Third Circuit have held that consumers have a private right of action under Section 1681s-2(b) to enforce the furnisher's duty to investigate. *See Martinez v. Granite State Mgmt. & Res.*, 2008 WL 5046792 *5 (D.N.J. November 20, 2008) (citing *Krajewski v. American Honda Fin. Corp.*, 557 F. Supp. 2d 596, 608 (E.D. Pa. 2008)); *see also Bartley v LVNV Funding, LLC*, 2010 WL 2629072 *9 (D.N.J. June 28, 2010).

In order to maintain a claim section 1681s-2(b), Plaintiff must prove that: (1) he sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified Ditech of the dispute, and (3) [Defendants] failed to investigate and modify the inaccurate information. *See Ruff v. America's Servicing Co.*, No. 07-0489, 2008 U.S. Dist. WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008). The existence of a private right of action under subsection (b) therefore hinges on the consumer's direct notification of a dispute to the consumer credit

agency.  *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-cv-2638 (CCC), 2012 WL 1340123, at *6 (D.N.J. Apr. 16, 2012).

Here, Plaintiff has not and cannot meet his burden on a claim for violation of the FCRA, because he has not alleged that he sent notice of any disputed information to a consumer reporting agency, that the consumer reporting agency alerted Ditech of the dispute, and that Ditech failed to investigate the dispute.  Accordingly, any claim for violation of 15 U.S.C. § 1681s-2(b) must be dismissed with prejudice.

### G.    Plaintiff's RICO Conspiracy Claim is Legally Deficient

Plaintiff summarily alleges that Defendants unlawfully violated RICO. Plaintiff's claim merely makes conclusory allegations that the Foreclosure Action was improper for some reason, again inviting this Court to sit as an appellate court over the state court.  Plaintiff's claims are baseless and properly dismissed.

The federal and New Jersey RICO statutes prohibit persons from conducting enterprises through the use of "racketeering activity" or "the "collection of unlawful debt."  18 U.S.C. § 1962(c); N.J.S.A. 2C:41-2.a.  In order to "plead a civil RICO claim under 18 U.S.C. § 1962(c), [a plaintiff] must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 784 F.Supp. 2d 508 (D.N.J. 2011), 518-19 (citing *Sedima v. Imrex Co.*, 473 U.S. 479, 482–83 (1985)).

- 36 -

The RICO statute defines a "'pattern of racketeering activity' to include engaging in 'at least two' predicate acts in a 10–year period." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (1991) (quoting 18 U.S.C. § 1961(5)). In this case, Plaintiff has not alleged any conduct or predicate actions that could constitute a violation of the RICO statute. Plaintiff simply alleges that the Foreclosure Action was improper and should have been decided differently. Beyond being baseless, two predicate actions are not even alleged.

In addition to failing to set forth two predicate actions, Plaintiff also failed to adequately plead the particular "racketeering activity" in which Defendants engaged. Under the RICO statute, "racketeering activity" has a precise definition, which includes "other crimes, ranging from criminal copyright activities, the facilitation of gambling, and mail fraud to arson, kidnaping, and murder." *Anza*, 547 U.S. at 479 (citing 18 U.S.C. § 1961(1)). Here, Plaintiff has not specified which crime in 18 U.S.C. § 1961(1) gives rise to the RICO claim. Filing a successful Foreclosure Action hardly fits the definition of "racketeering activity." *See* 18 U.S.C. § 1961(1) (defining "racketeering activity" as certain specific criminal activities); N.J.S.A. 2C:41-1.a (same). *See also Huertas v. Galaxy Asset Management LLC*, 641 F.3d 28 (3rd Cir. 2011); 18 U.S.C. § 1961(6); N.J.S.A. 2C:41-1.e (explicitly defining "unlawful debt" for RICO predicate act purposes as debt incurred in connection with

gambling activity or which is usurious).[3]  On this basis alone, this Court should dismiss Plaintiff's RICO claim.  *See Acampora v. Boise Cascade Corporation*, 653 F. Supp. 66, 68 (D.N.J. 1986) (finding that the "plaintiff's claim fails to state a claim within the ambit of RICO" where the plaintiff's complaint did not list the predicate acts for the alleged RICO violation).

Plaintiff has not alleged any of the elements of a sustainable RICO claim and this cause of action should be dismissed with prejudice.

### H. Plaintiff's "Lack of Due Process" Claim is Patently Frivolous and Must be Dismissed

Plaintiff's Claim for "lack of due process" is hardly worth mentioning in this Motion to Dismiss.  As discussed above, Plaintiff filed ***numerous*** motions in the Foreclosure Action—all of which were rejected by the Court.  This Claim must be dismissed with prejudice as it has no basis in law.

### I. Plaintiff Fails to State a Claim for Breach of Contract

Plaintiff alleges that Defendants breached the terms of the "loan/note" by proceeding with the Foreclosure Action.  This claim is ridiculous, as the Foreclosure

---

[3] To the extent that Plaintiff bases his RICO claim on any fraudulent conduct, this claim would fail, as detailed *infra*, under the heightened pleading standard of Rule 9(b).  *Warden v. McLelland*, 288 F.3d 105, 114 (3rd Cir. 2002).  Plaintiff's RICO claim only references a foreclosure being filed.  As detailed below, none of this constitutes fraudulent conduct, and is certainly not pled with the specificity required for fraud claims.  *In re Advanta Corp. Sec. Litig.*, 180 F.3d at 534 (3d. Cir. 1999); *Naporano Iron & Metal*, 79 F. Supp. 2d at 511 (D.N.J. 2000).

Action was commenced because Plaintiff failed to adhere to the terms of the contract by making payments under the Note and Mortgage.

To state a claim for breach of contract under New Jersey law, a party must allege: (1) the existence of a contract; (2) a breach of that contract; (3) damages flowing from that breach; and (4) that he himself performed his own contractual duties. *See Video Pipeline Inc. v. Buena Vista Home Entertainment, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citing *Pub. Serv. Enter. Group, Inc. v. Phila. Elec. Co.*, 722 F.Supp. 184, 219 (D.N.J. 1989)); *see also In re Cendant Corp. Sec. Litig.*, 139 F.Supp. 2d 585, 604 n. 10 (D.N.J. 2001) (noting that New Jersey law requires pleading of performance of movant's own contractual duties).

Here, Plaintiff cannot point to any contract that Defendants violated. In fact, Defendants complied with the Note and Mortgage. Plaintiff, on the other hand, violated the Note and the Mortgage by failing to make the required payments for a decade. Plaintiff have not and cannot identify any contract that has been violated by Defendants. Thus, the Plaintiff's breach of contract claim is unsustainable.

## J.     Plaintiff's Claim for Respondeat Superior in Connection with Purported Intentional Infliction of Emotional Distress Fails

Plaintiff's Amended Complaint asserted two additional causes of action: (1) Intentional Infliction of Emotional Distress against Safeguard Property, and (2) "Respondeat Superior" against all Defendants related to the intentional infliction claim. *Am. Compl. pp. 35-38.* Notwithstanding the fact that Plaintiff's respondeat

superior claim fails to because respondeat superior is not a cause of action,[4] the **underlying** cause of action for intentional infliction of emotional distress is fatally flawed, mandating that these claims be dismissed.

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege extreme and outrageous conduct, the proximate cause of which is distress so severe that it interferes with normal life activities. *See Buckley v. Trenton Savings Fund Society*, 111 N.J. 355, 366-69 (1988); *Griffin v. Tops Appliance City*, 337 N.J. Super. 15, 23-24 (App. Div. 2001). Stated another way, a plaintiff must prove that the conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Buckley*, supra, 111 N.J. at 366 (citations omitted).

New Jersey courts are reluctant to recognize emotional distress claims, reasoning that "subjective as they are, they offer a potential for abuse which dictates caution and the infrequency of circumstances deemed to justify judicial recognition of such claims." *Lemaldi v. DeTomaso of America, Inc.*, 156 N.J. Super. 441, 447

---

[4] "[T]here is no separate cause of action for respondeat superior. The respondeat superior doctrine 'recognizes a vicarious lability principle pursuant to which a master will be held liable in certain cases for the wrongful acts of his servants or employees.'" *Allia v. Target Corp.*, 2008 WL 1732964, at *6 (D.N.J. April 10, 2008) (quoting *Carter v. Reynolds*, 175 N.J. 402, 408 (2003)).

(Law Div. 1978).  New Jersey courts recognize that "the limited scope of the tort tolerates many kinds of unjust, unfair and unkind conduct." *Bishop v. Okidata, Inc.*, 864 F.Supp. 416, 427 (D.N.J. 1994) (*Fregara v. Jet Aviation Business Jets*, 764 F.Supp. 940, 956 (D.N.J. 1991)).  While intentional infliction of emotional distress has been recognized as an independent cause of action in New Jersey, it requires ***shockingly outrageous*** conduct.  *Buckley*, *supra*, 111 N.J. at 366.

In order to establish the type of severe emotional distress contemplated by this theory, a plaintiff is also required to demonstrate a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so . . . ."  *Griffin*, *supra*, 337 N.J. Super. at 26.  The standard applied is an objective one and the defendant's conduct must be "sufficiently severe to cause genuine and substantial harm to average persons." *Turner v. Wong*, 363 N.J. Super. 186, 200 (App. Div. 2003).

Plaintiff in this instance simply has not and cannot meet this high standard. First, Plaintiff has not alleged that Defendants engaged in any "extreme and outrageous conduct."   Mere allegations of "aggravation, embarrassment, an unspecified number of headaches, and loss of sleep," have been held to be insufficient as a matter of law to support a claim of intentional infliction of emotional distress. *Buckley*, *supra*, 111 N.J. at 368.  Allegations that the plaintiff was "acutely upset" by the incident, especially where no medical assistance or counseling is

- 41 -

sought, are not enough to maintain a claim for intentional infliction of emotional distress. *Aly v. Garcia*, 333 N.J. Super. 195, 204-05 (App. Div. 2000). The New Jersey Appellate Division has held that a plaintiff failed to adequately plead a claim for relief, "where the plaintiff claimed merely that he felt terrible, that he was devastated, and his whole personality changed as a result of the incident in question." *Griffin*, *supra*, 337 N.J. Super. at 26. Plaintiff's claims that he was left with a "fear" are not enough to sustain an intentional infliction of emotional distress claim.

Plaintiff has not alleged and cannot maintain a claim for intentional infliction of emotional distress as a matter of fact and law. Accordingly, this claim and its follow-on respondeat superior claim must be dismissed.

## CONCLUSION

For all of the reasons stated herein, Defendants respectfully request that the Court grant its Motion to Dismiss Plaintiff's Amendment Complaint with Prejudice because a second amendment would be futile.

**REED SMITH LLP**

*s/ Brian P. Matthews*
Brian P. Matthews

Dated: November 28, 2018

- 42 -