**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LUBOS NAPRSTEK, | Civil Action No.: 18-cv-11442 (CCC) |
| Plaintiff, | |
| v. | **OPINION** |
| DITECH FINANCIAL LLC, *et al.,* | |
| Defendants. | |

**CECCHI**, **District Judge.**

This matter comes before the Court on several motions to dismiss Lubos Naprstek's ("Plaintiff") Second Amended Complaint (ECF No. 109, "SAC") made by the following defendants (collectively "Defendants"): (1) Safeguard Property ("Safeguard") (ECF No. 121); (2) Federal National Mortgage Association ("Fannie Mae") (ECF No. 124); (3) Bank of America (ECF No. 125); as well as (4) TBI Mortgage, Inc. ("TBI Mortgage") and Toll Brothers (ECF No. 126) (collectively, the "Toll Defendants"). The motions are decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Defendants' motions to dismiss are **GRANTED**.

## I.   BACKGROUND

This action arises out of the foreclosure on Plaintiff's home at 24 Briar Court, Hamburg, New Jersey. After repeatedly litigating foreclosure in state court, Plaintiff now attempts to challenge the foreclosure in this federal Court.

### A.  Factual Background[1]

On December 21, 2006, Plaintiff entered into a promissory note with TBI Mortgage, which secured a mortgage (the "Mortgage") on his home. ECF No. 1-1 at 17.  Plaintiff defaulted on the Mortgage in 2008, and in 2016, after Ditech Financial LLC ("Ditech") became the assignee on the Mortgage, it filed a foreclosure action against Plaintiff in the Superior Court of New Jersey, Chancery Division, Sussex County (the "Foreclosure Action").[2] SAC at ¶ 10.

The Chancery Division court presiding over the Foreclosure Action entered a default judgment against Plaintiff, and Plaintiff moved to vacate the default judgment on January 30, 2017, alleging that Ditech did not have the right to foreclose "because it's not the owner of the Note and Mortgage," and because "Ditech provided false mortgage assignments." ECF No. 33-3 at 9.  On April 11, 2017, the Chancery Division denied plaintiff's motion to vacate. Id. at 33.  After Ditech moved for final judgment, Plaintiff opposed by contesting the chain of assignment and Ditech's ownership of the debt. ECF No. 33-5 at 4–9.

On October 17, 2017, the Chancery Division court entered a final foreclosure judgment against Plaintiff (the "Final Judgment"), finding that the promissory note and Mortgage were adequately presented and that Ditech, as the rightful owner of the Mortgage, was entitled to a sum of $640,486. ECF No. 33-7 at 2–4.  The Chancery Division ordered a sheriff's sale to satisfy the debt. Id. at 4.  Plaintiff subsequently filed a motion to vacate the Final Judgment, wherein he contested the chain of assignment again (this time specifying issues with the assignment documents), alleged fraud and unfair practices, and questioned Ditech's ownership of the

---

[1] The following facts are accepted as true for the purposes of the instant motions.
[2] The Court notes that a prior assignee on the Mortgage, Countrywide Home Loans, filed a 2009 foreclosure action against Plaintiff in state court, which was dismissed without prejudice for lack of prosecution. ECF No. 1-2 at 32.

mortgage. ECF No. 33-7 at 8–10.   On March 5, 2018, the Chancery Division court denied

Plaintiff's motion to vacate the foreclosure judgment, finding that:  (1) the chain of assignment

was valid and Plaintiff offered no credible evidence to challenge the assignment; (2) Plaintiff failed

to present evidence of bad faith or fraudulent behavior; and (3) Ditech had standing to foreclose

as the rightful owner of the Mortgage. ECF No. 33-8 at 29–40.  In short, Plaintiff "ha[d] simply

not provided any basis for the court to vacate the final judgment . . . [he and his wife] resided on

this property since 2006, and since October, 2008, they have failed to make their mortgage

payments pursuant to the loan terms they agreed upon." Id. at 39.  Plaintiff then filed an emergency

stay of the sheriff's sale, which the Chancery Division denied as moot on August 31, 2018. Id. at

42.  Subsequently, Plaintiff modified his mortgage, and as a result of the modification, the Final

Judgment was vacated on May 28, 2020, and the foreclosure action was voluntarily dismissed on

June 4, 2020. ECF No. 125-1 at 3 (citing SAC at 8 ¶ 55, 15 ¶ 62), 125-14, 125-15.

## B.  Procedural History

Plaintiff commenced this action on July 6, 2018 (ECF No. 1), and filed an Amended

Complaint on October 15, 2018 (ECF No. 23). Thereafter, the Court entered Plaintiff's stipulation

and order of voluntary dismissal as to defendants Ditech, DT Holdings, Green Tree Servicing LLC,

and Walter Investment Management Company. ECF No. 76.  Later, in an order issued on August

31, 2021, the Court granted Plaintiff's request to file a second amended complaint to reflect

Plaintiff's new loan modification agreement and vacatur of the final foreclosure judgment. ECF

No. 103. Plaintiff filed his Second Amended Complaint on October 21, 2021, re-naming

Safeguard, Fannie Mae, Bank of America, TBI Mortgage, and Toll Brothers and adding Shellpoint

Mortgage Servicing[3] as defendants. *See* SAC.  In the Second Amended Complaint, Plaintiff alleges that Defendants engaged in fraudulent and unconscionable practices with regard to the mortgage and the Foreclosure Action. Id.   Specifically, Plaintiff alleges that "Defendants have all conspired to make false representations" regarding the identity of the owner of Plaintiff's mortgage. Id. at 5. Moreover, Defendants also purportedly fabricated documents to create rights to the mortgage when, in fact "they had no right, title or interest in the debt." Id.

The Second Amended Complaint contains the following causes of action:  violation of the Real Estate Settlement Procedures Act ("RESPA") (Count One); violation of the New Jersey Consumer Fraud Act ( "NJCFA") and the False Claims Act, 31 U.S.C. §§ 3729–3733 ( "FCA") (Count Two); unjust enrichment (Count Three); fraud under 18 U.S.C. §§ 1341, 1343, 1344, and 1951(a) (Count Four); violation of the Fair Debt Collection Practices Act ("FDCPA") for wrongful foreclosure (Count Five); violation of the Fair Credit Reporting Act ("FCRA") (Count Six); violations of the New Jersey Civil RICO, N.J.S.A. 2C:41-1, *et seq.* and Federal Civil RICO statutes, 18 U.S.C. § 1962(C) (Count Seven); violation of Plaintiff's due process rights (Count Eight); negligence causing loss of business (Count Nine); and intimidation and property damage, pursuant to N.J.S.A. 2A:14-1, and negligent and/or intentional infliction of emotional distress (Count Ten).

Five of the six Defendants then filed individual motions to dismiss the Second Amended Complaint. *See* ECF Nos. 121 (Safeguard), 124 (Fannie Mae), 125 (Bank of America), and 126 (Toll Defendants). Plaintiff filed a single opposition on February 8, 2022 (ECF No. 131), to which

---

[3] The Court notes that, despite being named as a defendant in the Second Amended Complaint, Shellpoint Mortgage Servicing has not been served in this action.

the moving Defendants replied (ECF Nos. 132 (Bank of America), 133 (Fannie Mae), 134 (Safeguard), 135 (Toll Defendants)).

## II.    LEGAL STANDARD

To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  A claim is facially plausible when supported by "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint that contains "a formulaic recitation of the elements of a cause of action" supported by mere conclusory statements or offers "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (citation omitted).  In evaluating the sufficiency of a complaint, the court accepts all factual allegations as true, draws all reasonable inferences in favor of the non-moving party, and disregards legal conclusions. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231–34 (3d Cir. 2008).  On a motion to dismiss, the court separates the factual and legal elements of the claim then decides whether the facts alleged "show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citation omitted).

## III.   DISCUSSION

As explained below, each Count in the Second Amended Complaint is either time-barred, non-cognizable, and/or contains insufficient allegations to support a viable claim.  Accordingly, Defendants' motions to dismiss are granted and Plaintiff's Second Amended Complaint is dismissed.

### A.  Violation of RESPA (Count One)

Under Count One, Plaintiff alleges a violation of RESPA.  Congress enacted RESPA to provide consumers "with greater and more timely information on the nature and costs of the [real

estate] settlement process . . . ." 12 U.S.C. § 2601(a).  RESPA's Regulation X imposes various requirements on loan servicers in servicing a borrower's mortgage, including general disclosure requirements, error resolution procedures, and addressing requests from borrowers for information. *See Wilson v. Bank of Am., N.A.*. 48 F. Supp. 3d 787, 798–800 (D.N.J. 2014). Alleging a breach of Regulation X alone is insufficient to state a RESPA claim. *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006).  A plaintiff must also plead that the breach resulted in damages:  either "(1) actual damages to the borrower as a result of the [servicer's] failure to comply with [Regulation X]; or (2) statutory damages in the case of a pattern or practice of noncompliance with the requirements of [Regulation X]." *Grembowiec v. Select Portfolio Serving, Inc.*, No. 18-16885, 2019 WL 3183588, at *3 (D.N.J. July 16, 2019) (citations omitted).

Here, Plaintiff does not specify what provision of RESPA (or what requirement under Regulation X) was violated by Defendants' conduct.  In fact, Plaintiff only makes one specific allegation in connection with his RESPA claim:  at the inception of the Mortgage, TBI Mortgage purportedly acted as a "straw lender" and presented Plaintiff with a sales contract that required him to finance through TBI Mortgage or the price would increase by $30,000. SAC at 6 ¶ 35, 17 ¶¶ 3–4.  Accordingly, Plaintiff's RESPA claim is subject to dismissal as Plaintiff resorts to conclusory allegations without specifying what provision of RESPA was allegedly violated by which Defendants' conduct, meaning that neither Defendants nor the Court are put on adequate notice as to Plaintiff's RESPA claims. *See Lockhart v. United States Bank Nat'l Ass'n*, No. 16-4398, 2017 U.S. Dist. LEXIS 97015, at *17 (D.N.J. June 22, 2017) (dismissing plaintiff's RESPA claims because they relied upon conclusory allegations that did not give defendants fair notice of their allegedly wrongful conduct).

Moreover, to the extent Plaintiff alleges a violation of RESPA based on wrongdoing at the time of the loan's closing, such claims are time-barred.  RESPA claims must be brought up within three years "from the date of the occurrence of the violation." 12 U.S.C. § 2614.  Thus, the RESPA claim brought in 2018 must have been brought in 2009 to be timely, three years after Plaintiff's mortgage loan closed in 2006.

### B.  Violation of the FCA and NJCFA (Count Two)

Under Count Two, Plaintiff alleges violations of the FCA and the NJCFA.  Plaintiff's FCA claim must be dismissed because:  (1) the FCA imposes liability for submitting false or fraudulent claims to the federal government (*see* 31 U.S.C. § 3729), and there are no allegations whatsoever of the federal government's involvement herein; and (2) in order for a private person to make an FCA claim they must follow the *qui tam* provision, 31 U.S.C. § 3730(b), which Plaintiff has not done.

Plaintiff has also failed to state a claim under the NJCFA.  To state a claim for violation of the NJCFA, a plaintiff must allege:  (1) an unlawful practice; (2) that he suffered an ascertainable loss; and (3) a causal relationship between the unlawful practice and the ascertainable loss. *Dabush v. Mercedes-Benz USA, LLC*, 378 N.J. Super. 105, 114 (App. Div. 2005); *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 12–13 (App. Div.), *cert. denied*, 178 N.J. 249 (2003).  NJCFA claims are subject to the heightened pleading standard under Rule 9(b). *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).   To meet this standard, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which [it is] charged." *Id.* at 200 (internal citations and quotation marks omitted).  Claims are inadequately pleaded under Rule 9(b) where a plaintiff "lumps all [defendants] together as having engaged in wrongful conduct without

specifying which defendant was responsible for which actions." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 450 (D.N.J. 2011).  Plaintiff does exactly that:  his allegations are directed at the collective group of Defendants, without specifying which Defendants were involved in the fraud and how they contributed to said fraud; nor does he specify the timing of the alleged fraud. *See* SAC at 5–6.

Where Plaintiff does not engage in group pleadings and instead alleges that particular defendants committed fraud, those claims are also insufficient to sustain his NJCFA claim.  For example, Plaintiff asserts that "Fannie Mae and Bank of America . . . are also participants in this fraud," (SAC at 9, ¶ 60), but Plaintiff provides no facts in his pleadings beyond this conclusory statement to specify how these Defendants participated in the fraud. *See Reckitt Benckiser LLC v. Cotiviti, LLC*, No. 16-729, 2016 WL 5791410, at *3 (D.N.J. Oct. 3, 2016) (noting that to prevail on a fraud claim a plaintiff generally must allege the "who, what, when, where and how of the events at issue") (citation omitted).  Moreover, Plaintiff alleges that the Toll Defendants "originated the loan but forged the entire set of loan documents, destroyed the original set and recorded the fabricated version of the loan at the Office of Sussex County Clerk." SAC at 6, ¶ 37. However, here too Plaintiff fails to assert a fraud claim against the TBI Defendants with the requisite specificity, as he provides no information regarding how the loan documents were forged or who among the Toll Defendants forged documents. *See Dimitrakis v. Citibank, F.S.B.*, No. 12-7599, 2013 WL 496046, at *2 (D.N.J. Feb. 7, 2013) (noting that a plaintiff must "inject[] some measure of substantiation into their allegations of fraud" to satisfy Rule 9(b)).  Thus, the NJCFA claim is dismissed for failure to plead with the requisite specificity required by Rule 9(b).  *See Snyder*, 837 F. Supp. 2d at 450.

Moreover, to the extent Plaintiff alleges a violation of NJCFA based on conduct at the time of the loan's closing, such claims are barred by NJCFA's six-year statute of limitations. *See Kennedy v. Axa Equitable Life Ins. Co.*, No. 06-6082, 2007 WL 2688881, at *2 (D.N.J. Sept. 11, 2007) (citing *D'Angelo v. Miller Yacht Sales*, 261 N.J. Super. 683 (App Div. 1993)).

### C.  Unjust Enrichment (Count Three)

Under Count Three, Plaintiff alleges a claim for unjust enrichment.  To assert such a claim, the plaintiff must allege a quasi-contractual relationship wherein the defendant received a benefit, at the plaintiff's expense, under circumstances that would make it unjust for a defendant to retain the benefit without paying for it. *Snyder v. Farnam Companies, Inc.*, 792 F. Supp. 2d 712, 724 (D.N.J. 2011).  Here, Plaintiff alleges that the Toll Defendants "forced Plaintiff to accept a mortgage that included thousands of dollars more than they were entitled." SAC at 20, ¶ 5. However, beyond this conclusory allegation, Plaintiff's pleadings fail to demonstrate why the Toll Defendants were not entitled to the $30,000 payment Plaintiff alleges he was forced to pay to finance his mortgage. *See Heriveaux v. Durkin & Durkin LLC*, No. 18-13148, 2020 WL 487290, at *9 (D.N.J. Jan. 30, 2020) (dismissing an unjust enrichment claim where plaintiffs "failed to show that Defendants unjustly benefitted at their expense"); *see also Choice is Yours, Inc. v. Williams*, No. 14-1804, 2016 WL 5661709, at *9 (E.D. Pa. Sept. 30, 2016) (finding that to sustain an unjust enrichment claim a plaintiff must explain how another party has been unjustly enriched) (citation omitted).  Regarding the rest of the named Defendants, Plaintiff's conclusory allegation that "Defendants are attempting to receive a benefit through the [foreclosure] sale of Plaintiff's home" is insufficient to support a viable claim (SAC at 20, ¶ 7); Plaintiff does not explain how any

of the remaining Defendants stand to unjustly benefit from a foreclosure sale by an entity that is

no longer a party to this action.[4]   Thus, Count Three fails to state a claim.

### D. Fraud (Count Four)

Under Count Four, Plaintiff brings claims for fraud under four federal criminal statutes:

18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 1343 (Wire Fraud); 18 U.S.C. § 1344 (Bank Fraud);

and 18 U.S.C. § 1951(a) (Robbery and Extortion under the Hobbs Act).  These criminal statutes

do not give rise to private causes of action. *See Obianyo v. Tennesse,* 518 F. App'x 71, 73 (3d Cir.

2013) (no private action under wire fraud statute); *Jones v. TD Bank*, 468 F. App'x 93, 94 (3d Cir.

2012) (no private action under mail fraud statute); *Migrom v. Burstein,* 374 F. Supp. 2d 523, 529

(E.D. Ky. 2005) (no private action under bank fraud statute); *Peterson v. Philadelphia Stock*

*Exchange,* 717 F. Supp. 332, 336 (E.D. Pa. 1989) (no private action under the Hobbs Act).  Thus,

Count Four is dismissed.

### E. Violation of the FDCPA for Wrongful Foreclosure (Count Five)

Under Count Five, Plaintiff brings a FDCPA claim against Bank of America and Fannie

Mae only, for "commenc[ing] two foreclosure debt collection actions by making false

representations as to the character, amount, and legal status of the debt in dispute, and resort[ing]

to false representations and deceptive means to collect the debt in dispute by willfully

misrepresenting itself to be the 'owner' of the debt, knowing otherwise to be true." SAC at 24, ¶ 3.

However, claims for a violation of the FDCPA must be brought "within one year from the date on

---

[4] The Court notes that Plaintiff's unjust enrichment claim against Safeguard is especially weak
because he has not alleged a direct relationship between himself and Safeguard. *See id.* ("Since a
plaintiff must confer a benefit on the defendant to support an unjust enrichment claim, this element
has been interpreted by New Jersey courts as a requirement that 'the plaintiff allege a sufficiently
direct relationship with the defendant to support the claim.'") (quoting *Nelson v. Xacta 3000
Inc.,* No. 08–5426, 2009 WL 4119176, at *3 (D.N.J. Nov. 24, 2009)).

which the violation occurs," regardless of when the violation was discovered. *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019) (quoting 15 U.S.C. § 1692k(d)).  Where a plaintiff alleges a FDCPA violation based on the initiation and prosecution of a foreclosure action, the FDCPA claim must be brought within one year after the foreclosure action was filed. *DeStefano v. Udren Law Offices PC*, 802 F. App'x 688, 691 (3d Cir. 2020).  Thus, Plaintiff's FDCPA claims expired, at the latest in 2017, one year after the second foreclosure action was filed, meaning the instant action is time-barred. *See* SAC at 10.

### F.  Violation of FCRA (Count Six)

Under Count Six, Plaintiff claims that the remaining Defendants violated FCRA. SAC at 25–26.  Plaintiff does not specify which specific provision of FCRA was violated by Defendants but appears to allege a claim under 15 U.S.C. § 1681s-2(b), which provides a private a cause of action against individuals/companies that furnish incomplete or inaccurate information to a consumer reporting agency ("CRA"). *See Martinez v. Granite State Mgmt. & Res.*, No. 08–2769, 2008 WL 5046792, at *3 (D.N.J. Nov. 20, 2008).  To state a claim under § 1681s-2(b), the consumer must allege that:  (1) he "sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information." *Edwards v. Equable Ascent, FNCL, LLC*, No. 11-2638, 2012 WL 1340123, at *5 (D.N.J. Apr. 16, 2012) (citation omitted).  Plaintiff fails to allege that he ever disputed information on his credit report with a CRA, and as such, Count Six must be dismissed. *See id.*

### G.  New Jersey and Federal Rico Claims (Count Seven)

Under Count Seven, Plaintiff alleges claims under the New Jersey and federal RICO statutes.   The New Jersey and federal RICO statutes prohibit persons from conducting enterprises

through the use of "racketeering activity" or the "the collection of unlawful debt." 18 U.S.C.

1962(c); N.J.S.A. 2C:41-2.a.  To state a claim under the Federal RICO statute, "a plaintiff must

allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Marina*

*Dist. Dev. Co. v. Ivey*, 216 F. Supp. 3d 426, 435 (D.N.J. 2016) (citing *Lum v. Bank of Am.*, 361

F.3d 217, 223 (3d Cir. 2004)).  Similarly, to state a claim for a violation of the New Jersey RICO

statute, a plaintiff must plead: "(1) the existence of an enterprise; (2) that the enterprise engaged

in activities that affected trade or commerce; (3) that the defendant was employed by, or associated

with the enterprise; (4) that the defendant participated in the conduct of the affairs of the enterprise;

(5) that the defendant participated through a pattern of racketeering activity; and (6) that the

plaintiff was injured as a result of the conspiracy." *Id.* at 436.  To be subject to liability under either

statute, a defendant "must agree to commission of two or more racketeering acts, and . . . must

adopt the goal of furthering or facilitating the criminal endeavor," *Id.* (quoting *United States v.*

*Phillips*, 874 F.2d 123, 127 n.4 (3d Cir. 1989); *Smith v. Berg*, 247 F.3d 532, 537 (3d Cir. 2001))

(internal quotation marks omitted).

Plaintiff states the elements of a RICO claim in a conclusory fashion but has not pleaded

sufficient facts to support his allegations. *See Twombly*, 550 U.S. at 555 ("formulaic recitation[s]

of the elements" are insufficient to satisfy pleading standards).  For example, Plaintiff does not

allege sufficient facts to suggest that Defendants engaged in *any* instances of racketeering activity,

let alone a 'pattern' of racketeering activity.  Most paragraphs of Count Seven simply recount

various state and federal statutes, several of which are for various species of fraud. *See* SAC at 27–

32 ¶¶ 7–24.  As explained above, to the extent that Plaintiff alleges predicate acts of fraud, those

allegations lack the requisite level of specificity. *See infra* III.B.  Moreover, Plaintiff has failed to

allege that any Defendant agreed to engage in any type of racketeering activity, which is a predicate

for a RICO claim under both the federal and New Jersey statutes. *See Marina Dist.*, 216 F. Supp.

3d at 436.  Thus, Count Seven must be dismissed.

### H.  Due Process Violation (Count Eight)

Under Count Eight, Plaintiff alleges a violation of the Due Process Clause of the Fourteenth

Amendment to the United States Constitution.  This cause of action appears to be based on an

alleged lack of a fair hearing during the Foreclosure Action.  Plaintiff's generalized allegations do

not support a claim.  First, the Due Process Clause of the Fourteenth Amendment does not itself

provide a private right of action. *Providence Pediatric Med. DayCare, Inc. v. Alaigh*, 112 F. Supp.

3d 234, 247 (D.N.J. 2015).  Rather, "[t]o seek relief under the United States Constitution, a plaintiff

must utilize the vehicle of a claim under 42 U.S.C. § 1983." *Id.*    Second, liability under section

1983—as well as the duties imposed by the Fourteenth Amendment—extends only to state actors,

that is, those acting "under color of [state] law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929

(1982).  It is undisputed that the Defendants are not state actors. *See* SAC at 1–2 (describing

Defendants as private businesses).  Consequently, to state a section 1983 claim, Plaintiff must

allege that Defendants conspired with a state actor to deprive him of his constitutional

rights. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with

state officials in the challenged action, are acting 'under color' of law for purposes

of § 1983 actions.").  Plaintiff has made no such allegations, and it is well-settled that a party does

not act in concert with state officials simply by virtue of receiving a favorable judgment

in state court. *Dennis*, 449 U.S. at 28; *Keisling v. Renn*, 425 F. App'x 106, 108 (3d Cir. 2011).

Thus, Count Eight must be dismissed.

### I.   Negligence Causing Loss of Business (Count Nine)

Under Count Nine, Plaintiff alleges a negligence claim.  To state a claim for negligence, a plaintiff must establish the following four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Utility Co.*, 212 N.J. 576, 594 (2013) (citations omitted).  Here, Plaintiff alleges "he suffered financially" because various real estate websites "were listing online that Contrywide [sic] will be selling his house." SAC at 35, ¶ 7.  These listings allegedly prevented Plaintiff from selling his house, forced him to file for bankruptcy, and negatively impacted his guitar business. Id at 36, ¶¶ 8–12.  However, Plaintiff has failed to plead how any of the Defendants were involved with the online listings.  And further, Plaintiff has failed to assert any facts to establish that Defendants had a duty to Plaintiff or that this duty was breached by Defendants' conduct.  Thus, Count Nine must be dismissed.

### J.   Intimidation and Property Damage and Negligent and/or Intentional Infliction of Emotional Distress (Count Ten)

Under Count Ten, Plaintiff asserts a claim against Safeguard for "intimidation and property damage p[ur]suant to [New Jersey Revised Statute section] 2A:14-1," as well as a claim for negligent and/or intentional infliction of emotional distress.

Beginning with Plaintiff's claim for intimidation and property damage, section 2A:14-1 does not provide for a cause of action.  Instead, it is a statute of limitation governing tort-based property damage claims.  In his Second Amended Complaint, Plaintiff appears to assert that Count Ten incorporates a claim for harassment. SAC at 40 ("[Safeguard] acted intentionally in . . . harassing Plaintiff and his family.").  However, "New Jersey law has not recognized harassment as a free-standing civil cause of action for damages." *Greenblatt v. Klein*, No. 12-4575, 2015 WL 1034633, at *5 (D.N.J. Mar. 10, 2015), *aff'd*, 634 F. App'x 66 (3d Cir. 2015) (citation omitted).

Moreover, even if this Court recognizes harassment as an independent cause of action, the claim nevertheless fails.   New Jersey state courts that have permitted a civil cause of action for harassment have considered the harassment claim "akin" to a claim of intentional infliction of emotional distress by analyzing the two claims in conjunction. *See Juzwiak v. Doe*, 415 N.J. Super. 442, 455 (App. Div. 2010).   As explained directly below, Plaintiff's intentional infliction of emotional distress claim fails; and thus, the harassment claim fails as well when viewed in conjunction. *See id.* (dismissing civil claim for harassment because plaintiff did not establish the prima facie elements of an intentional infliction of emotional distress claim).

Turning to Plaintiff's claim for intentional infliction of emotional distress, Plaintiff asserts such a claim against Safeguard, for allegedly "trespassing on Plaintiff's home, attempting to break in, harassing Plaintiff and his family, taking pictures around the house and causing all of the aforementioned actions." SAC at 40, ¶ 27.   "[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988).   "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress." *Id.*

In his Second Amended Complaint, Plaintiff recites the elements of an intentional infliction of emotional distress claim (SAC at 38–39) but fails to allege any facts that indicate Safeguard engaged in outrageous conduct or intended for Plaintiff to suffer emotional distress. *See Iqbal*, 556 U.S. at 678 ("'labels and conclusions' or . . . 'naked assertions' devoid of further factual enhancement'" do not suffice to support a right for relief").   Rather, Plaintiff's intentional infliction of emotional distress claim appears to rest on the false assertion that Ditech did not have the right to foreclose, and thus that Safeguard did not have the right to enter Plaintiff's home. *See* SAC at

40.   Plaintiff has also failed to allege any facts that suggest he suffered severe distress – his sole conclusory allegation that "distress is certainly severe" and has "manifested itself both as a physical illness, and a psychological malady as well" (SAC at 39, ¶¶ 23, 25) is insufficient.  In fact, when justifying damages in this case, Plaintiff alleged that he suffered monetary losses, and damage to his credit and reputation, but did not mention suffering any emotional distress, let alone severe distress. *See* SAC at 16, ¶ 72.

Finally, to the extent Plaintiff asserts a claim for negligent infliction of emotional distress, it also fails.  To sufficiently plead a negligent infliction of emotional distress claim, a plaintiff must establish that: "(1) a duty of reasonable care was owed by the defendant[s] to the plaintiff, (2) that duty was breached, (3) the plaintiff suffered severe emotional distress, and (4) the breach was a proximate cause of injury." *Sanders v. Jersey City*, No. 18-1057, 2021 WL 1589464, at \*24 (D.N.J. Apr. 23, 2021) (quoting *G.D. v. Kenny*, 984 A.2d 921, 933 (N.J. Ct. App. Div. 2009)).  As explained above, Plaintiff fails to establish that Defendants breached a duty of care owed to Plaintiff, or that he suffered severe emotional distress as a result of Defendants' conduct. Accordingly, for the same reasons Plaintiff's claim for intentional infliction of emotional distress is deficient, his claim for negligent infliction of emotional distress fails as well.

In sum, Plaintiff's claims for intimidation and property damage, as well as negligent and/or intentional infliction of emotion distress in Count Ten must be dismissed for failure to state a claim. *See Iqbal*, 556 U.S. at 678.

## IV.     CONCLUSION

For the reasons stated above, the Defendants' motions to dismiss (ECF Nos. 121, 124, 125, 126) Plaintiff's Second Amended Complaint (ECF No. 109) are granted.  All claims are dismissed without prejudice.    An appropriate Order accompanies this Opinion.


DATED:  July 19, 2022

s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**
